CRAIN, Judge.
Fourteen lawsuits with a total of 1200 plaintiffs were filed against 84 defendants seeking damages for personal injury, mental anguish and economic and property damage allegedly caused by hazardous or toxic waste emanating from a hazardous waste dump site located in Livingston Parish. The hazardous waste site is known as the Combustion, Inc. site. Among the named defendants are the sellers, manufacturers and transporters of the alleged hazardous waste or toxic chemicals, and the owners and previous owners of the site. *1181 The suits were joined pursuant to Rule XXVI of the Rules of the Twenty-First Judicial District Court.
Plaintiffs moved for class certification. After a hearing on the matter the class was certified. The trial court ruled that the geographical area within which the class is to be comprised consists of that area located within 2.5 miles of the center of the Combustion site.
From the judgment granting class certification defendants appeal alleging several assignments of error. The primary issues raised on appeal are whether the legislative and jurisprudential criteria for class certification have been met; whether the trial judge correctly relied on his personal observations in establishing geographical boundaries of the class; and whether there is any scientific basis for establishing any class.
PREREQUISITES OF CLASS ACTION
In the third and fourth assignments of error alleged in brief by Defendants’ Steering Committee and in the second assignment of error alleged by appellant/defendant Borden, Inc., defendants contend that plaintiffs have not satisfied the codal and jurisprudential prerequisites for class certification. The prerequisites for the institution of a class action are 1) the parties are so numerous as to make joinder impracticable, La.C.C.P. art. 591; 2) common character among class members of the right sought to be enforced, La.C.C.P. art. 591(1); and (3) adequate representation of absent class members.
a) Numerosity
Defendants contend that the first prerequisite for a class action has not been met in that the thirteen separate actions had already been joined prior to the certification hearing, thus proving that the join-der of the 1200 plaintiffs in this case is not impractical.
In written reasons for judgment the trial court stated that although adjudication of the case by consolidation is possible, the class action is the better method by which to proceed.
The class action was devised to solve problems associated with adjudicating lawsuits in cases involving an unwieldy number of parties who should be joined. In lawsuits involving numerous plaintiffs there is a likelihood that the membership of the group will continually change through death or otherwise, thus causing recurring interruptions of the action. Additionally, with such a large group of parties there is the likelihood that one or more of the members will be beyond the reach of the court’s process. See Stevens v. Board of Trustees of the Police Pension Fund, 309 So.2d 144 (La.1975). Given that all prerequisites are met, the class action is the best method to resolve the problems associated with trying this case, e.g., the trial court has the authority to adopt a management plan to manage the litigation; and a judgment or decree in a class action binds all class members, representative or absent.
b) Adequate Representation
Defendants contend that the claims of class representatives do not adequately represent those of absent class members.
The claims of the class representatives should be a cross-section of, or typical of, the claims of all class members. This determination is made by the trial court and will not be disturbed by this court absent manifest error. See Ellis v. Georgia-Pacific Corp., 550 So.2d 1310 (La.App. 1st Cir.1989), writ denied, 559 So.2d 121 (La.1990). In written reasons for judgment, the trial judge found that the representative plaintiffs’ claims are for personal injury, property damage, or both, allegedly caused by toxins coming from the Combustion site, and are representative of claims of the entire class. A reading of the pleadings, depositions, exhibits and testimony presented at the certification hearing firmly convinces us that the trial court’s determination in this matter is not clearly wrong.
b) Common Character
Defendants contend that although common issues of fact and law are present in this action, a class action is not justifiable because individual factual and legal *1182 issues predominate or overwhelm those which are common to the parties.
In addition to the “common question” of law or fact required by La.C.C.P. art. 591(1) the jurisprudence has added the requirement that there must be a “common character” among the rights of the representatives and absent class members. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La.1984).
The “common character” requirement limits the class action to “cases in which it would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.” McCastle, 456 So.2d at 616. The purpose of utilizing the “common character” criteria is to assist the court in identifying cases in which the class action best affords economy of effort and uniformity of result without unduly affecting procedural safeguards for all parties. Id.
In written reasons for judgment the trial court enumerated five possible issues which are common to all class members:
1. Whether or not the substances deposited, stored, burned, or treated at the Combustion, Inc., site contained elements which are toxic, or harmful to human health.
2. Whether or not such toxins, if in existence, did in fact escape into the water and into the air; when did they escape and in what amounts;
3. Whether or not such toxins were of a sufficient concentration to endanger human or animal health within the geographical area involved in the release;
4. Whether or not any or all of the defendants had a legal duty to anticipate such a risk and provide precautions against such discharges; and
5. Whether or not punitive damages for such discharges are applicable and should be awarded.
After reviewing the pleadings, depositions, and evidence introduced at the certification hearing we conclude the trial court was not manifestly erroneous in finding the existence of a “common character.” The common issues of causation and duty predominate over individual issues of damages and individual defenses asserted by defendants to various subclasses of plaintiffs or other defendants. A mass tort is very susceptible to inconsistent determinations, thus the rights of all parties would be protected by a class action. Further a class action in this situation would be less costly, more efficient and a more expedient method of adjudication.
“When a ‘common character’ of rights exists, a class action is superior to other available adjudicatory methods for the purpose of promoting the basic aims and goals of a procedural device [in]: (1) effectuating substantive law; (2) judicial efficiency; and (3) individual fairness.” McCastle, 456 So.2d at 616. When the superiority of a class action is disputed the court must inquire into the facts and circumstances of the case to determine whether the intertwined goals of a class action would be better served by another adjudicatory method. Id. at 617. Because defendants contested the superiority of the class action in this case the trial court correctly inquired into all aspects of this case in order to determine whether the intertwined goals discussed above were met.
1) Effectuating Substantive Law
Class actions may effectuate substantive law by: (1) opening courts to claims not ordinarily litigated, thus enabling courts to enforce legislative policies underlying those causes of action; and (2) enabling courts to recognize the full implications of recognizing rights or remedies by enabling courts to determine what outcome in litigation would best serve the policies underlying the causes of action. McCastle, 456 So.2d at 618.
The record reveals and the trial court found that the majority of plaintiffs’ claims are small, many of which are for fear of contracting cancer and would not ordinarily be brought but for the availability of the class action. The class action would also effectuate the legislative policy underlying *1183 a tort action which is to protect or make whole a party harmed through the fault of another. This legislative policy will not be skewed or distorted by an exaggerated deterrent effect because if judgment is rendered in favor of plaintiffs, recovery of damages will be limited to an amount which will fairly compensate plaintiffs.
2) Judicial Efficiency
The second fundamental objective of a class action is to achieve economy of time, effort and expense. McCastle, 456 So.2d at 619. The primary issues in this case are whether the materials deposited at the Combustion site are toxic; defendants’ duty, if any, owed to plaintiffs; and whether the toxic materials escaped the site in some form to cause physical or economic injury or property damage to plaintiffs. Issues such as degree of exposure and type of injury which pertain to individual class members do not constitute a material variation of the elements of the claims of the class members. Neither do individual questions of quantum. See Ellis v. Georgia-Pacific Corp., 550 So.2d at 1317. Thus, here the questions of duty and liability predominate over individual issues raised by defendants.
Judicial efficiency will also be better served by a class action in this case because of the procedural devices available to the court. Pursuant to La.C.C.P. arts. 593.1, the trial court has the discretion to amend or recall its certification; enlarge, restrict or redefine the constituency of the class or issues; adopt a management plan for the litigation, including subdividing the action or separating the issues therein raised, and holding separate trials of separate issues. In spite of the additional burdens and responsibilities which the class action places on the court, any error to be made in maintaining a class action should be made in favor of upholding a class action because it is always subject to modification should new developments during the course of the trial so require. McCastle, 456 So.2d at 620-621.
3) Fairness To The Parties
The third objective of the class action is to promote uniformity of decision to similarly situated persons, without sacrificing procedural fairness or causing undesirable results. McCastle, 456 So.2d at 621. In order to determine whether the class action will be fair to the parties, the court should consider the injustice which can resort from inconsistent judgments in separate actions and the size of the claims of absent members.
The record reveals that no suits were filed by plaintiffs who are not joined in this action; plaintiffs’ claims are based on several common issues and allege similar damages; the majority of the claims are small; and the possibility of inconsistent judgments for the claims of 1200 similarly situated plaintiffs would result in grave injustice. In light of the above discussion, a class action is the fairest method for adjudicating these claims.
A careful review of the record indicates that the class action is the superior adjudicatory method to be used in this case. Since all prerequisites for a class action are present the trial court was not manifestly erroneous in certifying the class. See Ellis v. Georgia-Pacific Corp., 550 So.2d at 1313.
DEFINITION OF CLASS
In written reasons for judgment the trial judge stated that he placed little credibility in the testimony of both plaintiffs’ and defendants’ experts in air dispersion modeling. Both experts used mathematical formulas to establish a geographical area in which a person may suffer harmful exposure to alleged toxic substances from the Combustion site. The trial judge visited the Combustion site and based on his own observations defined the geographic area from which the class could be drawn (2.5 miles from the approximate center of the two site facilities). The trial court was in error in visiting the Combustion site to make personal observations upon which he relied in determining the class boundaries rather than using the observations to weigh the evidence presented on disputed points. Disputed facts are not in the same category as matters of common knowledge of which judicial notice can be *1184 taken. It is improper to resolve disputed issues of material fact by judicial notice. Elliott v. United States Fidelity & Guaranty Co., 568 So.2d 155 (La.App.2d Cir.1990).
A review of the record reveals that the calculations of plaintiffs’ expert were derived from incorrect data due to a typographical error. On the other hand, the evidence presented by defendants on this issue was deemed “incredible” by the trial court. This conclusion was not inappropriate since the personal observations of the trial judge led him to the conclusion that the risk of exposure boundaries asserted by defendants would not include areas of actual run-off of toxic materials, nor areas where the odor emanating from the dump was present. Consequently, we conclude that the record contains no valid evidence of the boundaries for risk of exposure. In order for the trial court to have technically valid evidence an expert in air dispersion modeling should recompute the calculations for establishing the geographic class perimeter using the corrected data. If the trial court is dissatisfied with the evidence he might consider appointing his own experts to draw a boundary. Livingston Parish Police Jury v. Illinois Central Gulf Railroad Company, 432 So.2d 1027 (La.App. 1st Cir.), writ denied, 437 So.2d 1137 (La.1983). In any event it is necessary that we remand to the trial court to receive additional evidence needed in order for the trial court to base its determination of geographic class perimeter on evidence within the record.
Defendants additionally contend that plaintiffs’ evidence failed to prove that the alleged toxic substances exposed plaintiffs to any potential health risks. A review of the record, however, indicates that plaintiffs have alleged facts and introduced testimony which support their claims.
Accordingly, the judgment of the trial court is affirmed in part and reversed in part and remanded for further proceedings in light of this opinion. Costs of this appeal are assessed equally against plaintiffs and defendants.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.