691 So.2d 760 (1997)
Gloria COTTON, et al.
v.
GAYLORD CONTAINER, et al.
Eddie WALKER, et al.
v.
GAYLORD CHEMICAL, et al.
KATES, et al.
v.
GAYLORD CHEMICAL, et al.
Nos. 96 CW 1958, 96 CW 2029, 96 CW 2049.
Court of Appeal of Louisiana, First Circuit.
March 27, 1997.
Writ Denied April 8, 1997.
Stayed Denied; Writ Denied April 8, 1997.
*762 Walter C. Dumas, Jarvis M. Antwine, Baton Rouge, and Michael R.D. Adams, Baton Rouge, and Johnnie L. Cochran, Jr., Carl E. Douglas, Los Angeles, CA and Keith L. Ward, Bogalusa, for Plaintiffs-Relators Eddie Walker, et al.
John Cummings, III, Frank C. Dudenhefer, Jr., New Orleans, for Plaintiffs-Relators Gloria Cotton, et al.
Charles R. Moore, Edward J. Walters, Jr., Donna Grodner, Baton Rouge, for Plaintiffs-Relators Thomas Dennard Kates, et al.
Ronnie G. Penton, Bogalusa, and Gerald E. Meunier, New Orleans, and Stephen B. Murray, New Orleans, for Plaintiff-Respondent The Plaintiffs' Liaison Committee.
Frederick R. Campbell Metairie, and Richard F. Knight, Bagalusa, for Defendants-Respondents Gaylord Chemical Corporation, et al.
Before LOTTINGER, C.J., and LeBLANC and FOGG, JJ.
Writ Denied in No. 97-CC-0800 April 8, 1997.
Stayed Denied; Writ Denied in No. 97-CC-0830 April 8, 1997.
LOTTINGER, Chief Judge.
On the afternoon of October 23, 1995, a chemical release occurred at the Gaylord Chemical Corporation's facility in Bogalusa, Louisiana. As a result, numerous lawsuits were filed, consolidated and eventually, certified as a class action. The present writ applications challenge the class action certification order.

RELEVANT FACTS AND PROCEDURES
Following consolidation of the numerous lawsuits related to the chemical release, the trial judge issued an order on May 2, 1996, advising all counsel that a status conference would be held on May 17, 1996. The order advised that a plaintiffs' liaison committee (PLC) would be appointed, and that interested counsel should apply for the PLC by submitting a letter and resume, giving qualifications for the appointment, along with a list of the counsel's clients. From the forty applicants, eleven plaintiff attorneys were appointed to the PLC at the May 17 status conference. The formation of the PLC prior to class certification was challenged in a supervisory writ, and on review this court dissolved the PLC. Walker v. Gaylord Chemical Corporation, 96-1391 (La.App. 1 Cir. 7/12/96). Ultimately, the Louisiana Supreme Court reinstated the trial court's order establishing the PLC prior to class certification. Walker v. Gaylord Chemical Corporation, 96-1913 (La.8/12/96); 678 So.2d 22.[1]
Prior to the supreme court's reinstatement of the PLC, a Consolidated Amended Master Petition was filed in In Re Nitrogen Tetroxide (N20) Leak at Bogalusa, No. 73,341 (22nd Judicial District Court, Washington Parish, Louisiana). A Motion for Class Certification, Appointment for Class Counsel, and Appointment of Plaintiffs' Liaison Committee was also filed. The motion was supported by a joint stipulation signed by counsel for the Pritchard plaintiffs[2] and counsel for two defendants, Gaylord Chemical Corporation and Gaylord Container Corporation. These parties stipulated that:
1. Over one thousand individuals have made claims for damages in these various consolidated suits. These claims arise out of an alleged release of a chemical from a railroad tank car located on the premises of Gaylord Chemical Corporation in Bogalusa, *763 Louisiana, which occurred on or about October 23,1995.
2. The requirement of "numerosity," as defined in La. C.C.P. Art. 591, is present in the claims of over one thousand claimants. Moreover, it would be impracticable for these identified and absent claimants to be joined as parties.
3. The claimants in this matter have filed petitions for compensatory and punitive damages arising out of their alleged exposure to the chemical released from the railroad tank car located on the premises of the Gaylord Chemical Corporation facility on or about October 23, 1995. As such, there are numerous issues which are common to all members of the proposed class.
4. The named plaintiffs, as set forth fully in the plaintiffs' Petition, will fairly insure the adequate representation of all members of the proposed class. As such, it is stipulated and agreed that the requirement of adequate representation pursuant to La. C.C.P. Art. 592 is satisfied.
5. Plaintiffs and defendants further stipulate and agree that counsel for plaintiffs have considerable experience in mass toxic tort litigation, and that plaintiffs are therefore adequately represented from a legal standpoint.
6. Subject to this Court's power, pursuant to La. C.C.P. Art. 593.1(B), to redefine or decertify the class, or to establish subclasses at any time before a decision on the merits, plaintiffs and defendants further stipulate and agree that this matter should be certified as a class action pursuant to La. C.C.P. Art. 593.1, et. seq., and further agree as to the scope and definition of the class, to be:
All persons who have been and/or claim to have been injured or otherwise damaged as a result of an incident involving a chemical release from a Railroad Tank Car located on the premises of Gaylord Chemical Corporation in Bogalusa, Louisiana, occurring on or about October 23, 1995.
On the same day that the petition, motion and stipulation were filed, the trial judge, in the absence of an evidentiary hearing, signed an order granting class certification. The trial judge stated that certification was based upon consideration of the motion, the memorandum in support thereof and the joint stipulation. The order defined the class as per the joint stipulation and re-appointed the same attorneys to the PLC.
Several plaintiffs challenged this order in applications for supervisory review. Cotton v. Gaylord Container, 96-1958; Walker v. Gaylord Chemical Corporation, 96-2029; Kates v. Gaylord Chemical Corporation, 96-2049. The primary issues raised by relators are: 1) whether the notice of claim provision creates an illegal opt-in class; 2) whether the trial judge erred in considering the stipulation; 3) whether the criteria for class certification was met; and 4) whether the trial judge erred in failing to conduct a hearing prior to certification.

PRIOR WRIT DENIAL
We first address the PLC's contention that all issues relating to the appointment of the PLC, the adoption of the Case Management Order (CMO), the claim form procedure and the method by which the class was certified were previously decided by this court when we declined to exercise our supervisory jurisdiction in Walker v. Gaylord Chemical Corporation, 96-2029 (La.App. 1 Cir. 10/1/96).
Generally, when an appellate court considers arguments made in supervisory writ applications or responses to such applications, the court's disposition on the issue considered usually becomes the "law of the case" foreclosing re-litigation of that issue either at the trial court on remand or in the appellate court on a later appeal. Easton v. Chevron Industries, Inc., 602 So.2d 1032 (La. App. 4 Cir.), writs denied, 604 So.2d 1315, 1318 (La.1992). However, the denial of a writ application creates a different situation. A denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and does not bar reconsideration of, or a different conclusion on, the same question when an appeal is taken from a final judgment. Tolis v. Board of Supervisors of Louisiana State University, 95-1529 (La.10/16/95); 660 So.2d 1206, 1207; Sattar v. Aetna Life Insurance *764 Company, 95-1108 (La.App. 4 Cir. 3/20/96); 671 So.2d 550.
This court declined to exercise its supervisory jurisdiction in Walker, thus reconsideration of these issues is appropriate at this time.

OPT-IN CLASS
In brief, relators assert that before determining whether a class was properly certified, we should determine whether the notice approved by the trial court creates an illegal opt-in class.
The class action notice provides in pertinent part:
1) If you are one of the individuals who fits the class definition above, YOU ARE A CLASS MEMBER, unless you request to be excluded in the manner set forth below....
2) AS A CLASS MEMBER, IF YOU WISH TO MAKE A CLAIM FOR DAMAGES, you must comply with all present and future orders of the Court. Pursuant to a Case Management Order entered by the Court on June 27, 1996, YOU MUST FILE A NOTICE OF CLAIM FORM ON OR BEFORE ???, AND A SEPARATE PROOF OF CLAIM FORM ON OR BEFORE ???, AT THE FOLLOWING ADDRESS:
Official Claims Office
In Re: Chemical Release at Bogalusa
802 Louisiana Avenue
Bogalusa, Louisiana 70427
The Notice of Claim Form and the Proof of Claim Form are available at, and will be provided by, the Official Claims Office at the above address, or you may obtain these forms from your individual attorney. These forms, once completed, must be signed by you in the presence of, and notarized by, an individual designated by the Class Counsel as being responsible for the Notice of Claim Forms and Proof of Claim Forms. A separate Notice of Claim Form and Separate Proof of Claim Form must be made for each individual desiring to be included....

ALL NOTICE OF CLAIM FORMS MUST BE FILED ON OR BEFORE ??? AND ALL SEPARATE PROOF OF CLAIM FORMS MUST BE FILED ON OR BEFORE ??? AT THE CLAIMS OFFICE. IF YOU DO NOT FILE A NOTICE OF CLAIM FORM BY ??? AND A SEPARATE PROOF OF CLAIM FORM BY ???, THEN ANY AND ALL CLAIMS BY YOU SHALL BE FOREVER BARRED.
3) IF YOU WISH TO BE EXCLUDED FROM THE CLASS, you must obtain and file an Exclusion Form at the following address:
Mr. Johnny D. Crain
Clerk of Court and Ex-Officio Recorder
22nd Judicial District Court for Washington Parish
Courthouse
Franklinton, Louisiana 70438
ALL EXCLUSION FORMS MUST BE PROPERLY SIGNED, NOTARIZED AND FILED WITH THE CLERK OF COURT NO LATER THAN ???. IF YOU DO NOT TIMELY EXCLUDE YOURSELF FROM THE CLASS ACTION, YOU WILL BE CONSIDERED A MEMBER OF THE CLASS AND WILL BE BOUND BY ALL ORDERS OF THE COURT, INCLUDING ANY DECISION RENDERED BY THE COURT IN THE CLASS ACTION.
4) IF YOU DO NOT TIMELY FILE THE EXCLUSION FORM AND YOU FAIL TO TIMELY FILE THE NOTICE OF CLAIM FORM OR PROOF OF CLAIM FORM, ANY CLAIM YOU MAY HAVE FOR INJURY OR DAMAGE ARISING OUT OF THE OCCURRENCE OR OCCURRENCES AT THE GAYLORD CHEMICAL CORPORATION PLANT BEFORE, ON OR ABOUT OCTOBER 23, 1995 SHALL BE FOREVER BARRED.
First, relators assert that the notice of claim form creates an illegal opt-in class. Second, they contend that the procedures *765 outlined in the notice are overly burdensome. Claimants are required to complete a complicated, costly process to either opt-out or optin to the class. To complete the notice of claim form and the proof of claim form, a claimant has to go to the claims office and have an approved notary authenticate the form. No other notary in the state may notarize these forms. Additionally, claimants should be able to opt-out by simply submitting a signed writing. According to relators, these formalized procedures to opt-in and opt-out create a drain on the small awards that most members may recover and do nothing more than generate additional litigation costs.
We first address the argument that the notice of claim form creates an illegal opt-in class. The initial class notice approved by the trial judge in this case informs claimants that they may opt-out of the class by filing an exclusion form. Claimants who do not request exclusion and desire to make a claim for damages must complete a notice of claim form fifty days after the opt-out deadline.[3] The form requests personal information such as the claimant's name, address and date of birth. The claimant also provides information regarding evacuation, physical and mental injuries, medical treatment, lost income and property damage.
In federal class action cases, this procedure is known as the "dual-notice" device. The dual-notice device requires class members who do not opt-out to take some affirmative action as a condition of ultimate recovery. Forbes v. Greater Minneapolis Area Board of Realtors, 61 F.R.D. 416, 418 (D.Minn.1973). The dual-notice can be given at one time or split up so that the opt-out notice proceeds the notice of the affirmative action necessary as a condition of ultimate recovery. Id.[4]
There is no Louisiana caselaw which prohibits requiring a class member to furnish information regarding damages. In this case, claimants who do not request exclusion become members of the class fifty days prior to the deadline for filing the notice of claim form. Class members who fail to file the form remain members of the class for purposes of res judicata and injunctive relief. The notice of claim form is a means of obtaining information on individual damage claims after the opt-out period; it is not an opt-in requirement as suggested by relators.
Although we conclude that the form does not create an illegal opt-in class, the PLC has failed to persuade this court that submission of the form is necessary at this early stage of the proceedings. Federal courts have sanctioned the use of proof of claim forms prior to a determination of liability in limited situations. Whether claimants must submit a proof of claim form or, in this case, a notice of claim form prior to a determination of liability depends on the circumstances of each individual case.
In Harris v. Jones, 41 F.R.D. 70 (D.Utah 1966), a class action suit alleging violations of securities laws, the court required second notices, after the initial class notification, informing class members that they must file simple statements of their claims or face dismissal. The purpose of the statements was not to gather in proof of damages, but to enable the court to "determine the adequacy of the existing representation, more effectively to define the class or to establish or eliminate sub-classes, and to establish practical guides for the trial of the cases and, it is hoped, the submission of the issues for meaningful determination by a jury." Id. at 74.
In Philadelphia Electric Company v. Anaconda American Brass Company, 43 F.R.D. 452 (E.D.Pa.1968), an antitrust class *766 action, the court required class members to come forward with proof of claims prior to trial. The court noted that there was no reason why claimants may not be required to take some minimal affirmative action as a condition to ultimate recovery. Id. at 459. The court imposed the early proof of claim requirement because it "would reveal the true scope of the litigation, and would either greatly reduce the trouble and expense of any subsequent notices which may be required, or provide a basis for informed reappraisal of the class-action question." Id.
In Korn v. Franchard Corporation, 50 F.R.D. 57, 59 (S.D.N.Y.1970), the court approved simultaneous mailing of class notice and proof of claim forms. Under the particular circumstances of that case, the court concluded that early proof of claims would aid in determining the size of the class and the continued adequacy of class representatives. Additionally, the information was relevant to the issue of reliance, an element to be proved during the liability phase of trial. Id. However, considering the early stage of the litigation, the court refused to exclude from recovery those individual members who failed to respond. Id. at 60.
In Biben v. Card, 789 F.Supp. 1001, 1005 (W.D.Mo.1992), another securities fraud class action case, the court allowed submission of proof of claims prior to a finding of liability. Therein the court determined that information about the true value of damages was needed in the liability state of trial. Additionally, the request for submission of claims came six years after class certification. Furthermore, the pending $4 million settlements provided sufficient incentive to class members to respond to the submission of claims. Id.
In contrast with the aforementioned cases are B & B Investment Club v. Kleinert's Inc., 62 F.R.D. 140 (E.D.Pa.1974) and In Re Antibiotic Antitrust Actions, 333 F.Supp. 278 (S.D.N.Y.1971) in which the courts refused to allow submission of proof of claims prior to a finding of liability. In B & B, the court refused to require submission of claims until liability or a recovery fund was established. The court determined that without such a fund, there was not sufficient incentive for absent class members to respond. The court reasoned that early submission of claims was inconsistent with Fed. Rule Civ. P. 23 whose purpose is to provide a forum to small claimants who would otherwise fail to act. B & B, 62 F.R.D. at 148. These small claimants are more likely to take affirmative action to recover when liability and/or a recovery fund is established. Id.
In discussing when class members should be required to come forward with proof of their claims, the court in In Re Antibiotic Antitrust Actions, concluded that, "it is doubtful that such a burdensome requirement should be imposed on a class like the present one where the injury has been spread over a large number of purchasers, none of whom may have a claim large enough to justify the expense of preparing a proof of claim form until they are assured of a recovery." In Re Antibiotic Antitrust Actions, 333 F.Supp. at 282. The court was unwilling to impose so great an expense and burden on the absent class members prior to a finding of liability.
In the present case, the PLC suggests that the notice of claim form is necessary to aid in settlement of this matter. They also assert that use of the form will reduce costs by identifying which claimants will need to complete the more lengthy proof of claim forms. Furthermore, the notice of claim form is necessary to gather information to prove the claims of individual class members.
The PLC has not alleged that the information sought is necessary to re-evaluate class status or to determine the adequacy of existing class representation. Nor is there a showing by the PLC that the information regarding individual damages is relevant to issues of liability.
While we acknowledge that use of the forms may aid in settlement negotiations, we also recognize that the uncertainty caused by the unknown variable of how many class members will assert claims, is a problem common to all class actions. Moreover, settlement negotiations in any case frequently necessitate the mutual appraisal and bargaining over subjective factors.
*767 In cases such as this, where the individual claims information is not necessary for the liability stage of trial, where the class is large while individual claims are small, and where there is no pending settlement to encourage class members to respond, submission of individual claims is not appropriate until liability or a recovery fund is established. Under these circumstances, it is not until liability is established that the gathering of information to support individual claims becomes relevant. After a determination of liability, the one page notice of claim form may still be utilized by the PLC to reduce costs to the class. On the other hand, should the defendants prevail, there will be even less cost to the class because there will be no need to gather any individual claims information.
For the foregoing reasons, we find that the PLC has failed to demonstrate that submission of individual claims is necessary prior to a determination of liability. We therefore reverse the trial judge's order approving class notice. On remand, the trial judge is instructed to approve a new class action notice which may allow use of the notice of claim form and/or proof of claim form only after a determination of liability.
We next determine whether the procedures outlined in the notice are overly burdensome and serve merely to generate additional litigation costs. Relators focus primarily on the notary requirements. Relators assert that there is no legal requirement that any notice of claim or proof of claim forms be notarized and that the formalized procedure is a drain on the small awards that most class members may recover. Additionally, there is no legal requirement that the opt-out be anything other than a signed writing.
On November 15,1996, the trial judge held a hearing on the joint motion for approval of class action notices, forms and manner of publication filed by the PLC and defendants.[5] At the hearing, members of the PLC asserted that notarization of the notice of claim form and proof of claim form by an trained notary assures that all claimants understand the significance of the forms. By using the same notaries for the thousands of claim forms which will likely be filed, the plaintiffs and defendants can be confident that the data collected is accurate. Furthermore, the PLC asserts that this process will save time by preventing or greatly reducing the need to re-submit incomplete or improperly executed forms.
Louisiana's class action articles are silent on the issue of notice. However, federal and state due process requires that notice be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." Williams v. State, 350 So.2d 131, 138 (La. 1977); Ellis v. Georgia-Pacific Corporation, 550 So.2d 1310, 1318 (La.App. 1st Cir.1989), writ denied, 559 So.2d 121 (La.1990). Plaintiffs must be given the option to opt-out of the class action. Williams, 350 So.2d at 137; Ellis, 550 So.2d at 1319.
Upon a review of the class action jurisprudence, we find nothing to support the notarial requirements imposed in this case. Additionally, we note that the sample class action notices submitted by the PLC and defendants in support of their joint motion do not require notarization of the claim forms or the opt-out notices. Even the PLC observed in brief that "many (if not a majority) of the class members are already represented by counsel who can assist them with the completion of the Notice of Claim form. For those persons who have not retained counsel, the PLC has set up a claims office to assist with the completion of the Notice of Claim."
In light of the PLC's observation and the lack of legal authority on this issue, we find that it is overly burdensome to require claimants to have their forms notarized by a notary selected by the PLC. On remand we instruct the trial judge to remove all references to these requirements from the new class action notice.

*768 STIPULATION
Relators contend that the trial judge erred in considering the joint stipulation as evidence in support of class certification.
Generally, a stipulation has the effect of a judicial admission which binds the parties and the court when not in derogation of the law. Mobley v. Harrel, 571 So.2d 662, 664 (La.App. 2nd Cir.1990). However, stipulations cannot affect the powers, duties and prerogative of the court. Mobley, 571 So.2d at 664-65; Hair v. City of Baton Rouge, 297 So.2d 451, 455 (La.App. 1st Cir.), writ denied, 300 So.2d 183 (La.1974). The law is clear that courts are not bound by stipulations of parties purporting to determine legal conclusions. Commercial National Bank v. Steele, 542 So.2d 1154, 1156 (La.App. 2nd Cir.1989). While parties are bound by their pleadings and stipulations regarding factual matters, stipulations involving questions of law are given no effect, since it is the function of the courts to construe the law. Id.
The stipulation in question contains several legal conclusions. In paragraphs 2, 4 and 5, the parties stipulated that the elements of numerosity and adequate representation were met in this case. The trial judge improperly relied on these portions of the stipulation in issuing the certification order since it was the judge's duty to construe the law and apply the facts of the case to determine whether the criteria was met. The trial court and the parties were bound only by those portions of the stipulation pertaining to factual matters. To bind the court to the entire stipulation would impermissibly interfere with its powers.
Having concluded that the trial judge could not properly consider those portions of the stipulation, we must now determine whether the plaintiffs/movers were able to meet their burden of proving the prerequisites for a class action.

PREREQUISITES FOR CLASS ACTION
The requirements for a class action are set forth in La.Code Civ. P. arts. 591 and 592. The requirements are: (1) a class so numerous as to make it impractical for all of the persons to join or be joined as parties; (2) the joinder of parties who are members of the class and able to provide adequate representation for absent members; and (3) a "common character" between the rights of the representatives of the class and the absent members. Brumfield v. Rollins Environmental Services (LA), Inc., 589 So.2d 35, 37 (La.App. 1st Cir.1991); Ellis, 550 So.2d at 1314.
The initial burden is on the party seeking to maintain the class action to establish these elements. Brumfield, 589 So.2d at 37. Conclusory allegations of a pleading alone are insufficient to establish the existence of a class. Id. In determining whether the elements have been established, the court may consider the pleadings, affidavits, depositions, briefs, exhibits and testimony presented at a certification hearing. See Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d 1177, 1181 (La. App. 1st Cir.), writ denied, 605 So.2d 1122 (La.1992); Ellis, 550 So.2d at 1315.

NUMEROSITY
The first requirement, often referred to as numerosity, is determined based upon the facts and circumstances of each case. For the numerosity requirement to be met, it must be shown that the class is so numerous that joinder is impractical, but at the same time, it is a definable group of aggrieved persons. Dumas v. Angus Chemical Company, 25632 (La.App. 2 Cir. 3/30/94); 635 So.2d 446, 450, writ denied, 94-1120 (La.6/24/94); 640 So.2d 1349; Rivera v. United Gas Pipeline Company, 613 So.2d 1152, 1154 (La.App. 5th Cir.1993).
Relators contends that while thousands of persons were affected by the tank car leak the class definition is too broad, and until a geographic limit is placed on the definition, there is no definable group of aggrieved persons.
The evidence contained in the record shows that this element has been satisfied. In a per curiam opinion dated July 10, 1996, the trial judge noted that, "a total of seventyeight cases have been filed in this matter to date; more are expected ... The litigation *769 now involves thousands of plaintiffs." While the class has not yet been geographically defined and the estimated number of claimants is unclear, the record does indicate that thousands of claimants are presently involved. These claimants represent a definable group whose claims are related to the same incident. Compare Dumas, 635 So.2d at 450 (Plaintiffs with explosion related claims were a definable group).
Furthermore, cumulation of the individual suits, joinder of the parties and consolidation of the individual suits would be impractical. Due to the large number of plaintiffs there is a possibility that the membership of the group would constantly change, causing recurring interruption of the action. The interested parties appear to be so numerous that the courts would be unduly burdened by separate suits or by their joinder, and class action would clearly be more useful and judicially expedient than the other available procedures. E.g. Dumas, 635 So.2d at 450; Adams v. CSX Railroads, 615 So.2d 476, 481 (La.App. 4th Cir.1993).
The class is presently defined as:
All persons who have been and/or claim to have been injured or otherwise damaged as a result of an incident involving a chemical release from a Railroad Tank Car located on the premises of Gaylord Chemical Corporation in Bogalusa, Louisiana, occurring on or about October 23,1995.
While we agree that this definition is somewhat broad, and that geographic limits are necessary, such a finding does not defeat class certification. The facts of this case are similar to Adams where the proposed class comprised residents, businesses and persons physically present in New Orleans on September 9, 1989, who sustained damages as a result of a chemical leak. Adams, 615 So.2d at 481. The court upheld the finding of numerosity even though the class had not been geographically limited and the number of persons who would be included in the description were unknown. Id. However, the record indicated that over ten thousand persons and entities filed suit as a result of the accident. Id.
Additionally, we note that reversal on the issue of geographic boundaries does not necessitate reversal of class certification. In Livingston and Lailhengue, the appellate courts reversed the trial courts' determination of geographic class perimeter while affirming class certification. Livingston Parish Police Jury, 598 So.2d 1177; Lailhengue v. Mobil Oil Company, 94-2114, 94-2115, 94-2116 (La.App. 4 Cir. 6/7/95); 657 So.2d 542. Both cases were remanded to the trial court for the purpose of redefining the geographic boundaries of the class. Livingston Parish Police Jury, 598 So.2d at 1184; Lailhengue, 657 So.2d at 549.
Furthermore, La.Code Civ. P. art. 593.1(B) provides that at any time before a decision on the merits, the court may alter, amend or recall its certification and may enlarge, restrict or otherwise redefine the constituency of the class or the issues to be maintained in the class action. McGee v. Shell Oil Company, 95-64, 95-65, 95-66, 95-67, p. 4 (La.App. 5 Cir. 6/28/95); 659 So.2d 812, 815, writ denied, 95-2476 (La.12/15/95); 664 So.2d 457; Adams, 615 So.2d at 481.
In the present case, the finding of numerosity is supported by the record which indicates that thousands of plaintiffs have already filed suit. However, it is necessary for the trial judge to take additional evidence, either expert or otherwise, which will support a concise geographic definition of the class of individuals impacted by this incident. We therefore reverse the trial judge's definition of the class and on remand instruct the trial judge to receive evidence necessary to set the geographic boundaries of the class to include those areas impacted by the tank car release.

ADEQUACY OF REPRESENTATION
The second requirement, adequacy of representation, is to ensure that the absent class members are properly represented. Our state courts have determined that this element requires that the claims of the class representatives be a cross-section of, or typical of, the claims of all class members. Livingston, 598 So.2d at 1181; Dumas, 635 So.2d at 450; Adams, 615 So.2d at 481.
Relators contend that the identity of the class representatives is unclear and thus, adequate representation cannot be determined.
*770 Additionally, relators assert that there is no evidence in the record to support a finding of adequacy of class counsel.
We find no confusion regarding the identity of the class representatives. The master petition filed in connection with the motion for class certification specifically names the individuals who will represent the proposed class. The master petition indicates that the class seeks damages for physical injury; mental and emotional distress; disability; disfigurement; inconvenience; evacuation expenses; past, continuing and future medical expenses; loss of income; the diminution of wage-earning capacity; deprivation of the use and enjoyment of their homes and/or property; property damage; business losses; diminution in the value of property; the loss of life's pleasures; the loss of financial support, consortium, services, nurture and society; preterminal conscious pain and suffering; and funeral and burial expenses.
However, upon reviewing the record, we find insufficient evidence tending to show that the representatives' claims are typical of the claims sought by the class. There were no depositions, affidavits or oral testimony of the class representatives submitted to the court. Compare Ellis, 550 So.2d at 1315; Dumas, 635 So.2d at 451 and Adams, 615 So.2d at 481 (depositions submitted to support adequacy of class representation.); Livingston, 598 So.2d at 1181 (court considered pleadings, depositions, exhibits and testimony to determine adequacy of representation). Plaintiffs relied on the conclusory allegations of the master petition. As we noted in Brumfield, conclusory allegations alone are insufficient to establish the existence of a class so as to permit the use of class action procedure. Brumfield, 589 So.2d at 37.
Because the record contains no evidence or testimony to suggest that the class representatives are similarly situated to the absent claimants, the trial court did not have sufficient information to make a determination that the representatives would fairly ensure the adequate representation of the absent class members.
Additionally, we find that there was no evidence in the record to support a finding of adequacy of class counsel. To date, our state courts have not specifically addressed the adequacy of counsel issue. However, federal courts have long construed the adequacy of representation requirement to consist of two componentsadequacy of class representatives as well as the adequacy of class counsel. Joint Eastern and Southern District Asbestos Litigation, 78 F.3d 764, 778 (2nd Cir. 1996); Georgine v. Amchem Products, Inc., 83 F.3d 610, 630 (3rd Cir.1996); Gonzales v. Cassidy, 474 F.2d 67 (5th Cir.1973); Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968); Johnson v. Shreveport Garment Company, 422 F.Supp. 526, 534-35 (W.D.La. 1976), affirmed, 577 F.2d 1132 (5th Cir.1978).
Because the source of Louisiana's class action procedure is Fed. Rule Civ. P. 23, we are guided by the decisions of the federal courts and conclude that the adequacy of representation requirement is satisfied by establishing that: 1) class representatives are a cross-section or typical of the claims of all class members; and 2) class counsel is qualified, experienced and generally able to conduct the litigation. The interests of absent class members can only be protected by requiring that both of these basic standards are satisfied. Class counsel must be more than merely an attorney admitted to practice before a particular court hearing the case; he must have sufficient experience and training to satisfy the trial court that he will be a strenuous advocate for the class. Johnson, 422 F.Supp. at 535.
In the present case, the trial court reviewed numerous resumes and applications prior to appointing the PLC. The record contains a judgment dated June 26, 1996[6] and a per curiam opinion dated July 10, 1996[7] wherein the trial judge indicated that of the forty applicants[8], eleven plaintiff attorneys *771 were named to the PLC. The judge believed that these attorneys were "eminently qualified to adequately represent the plaintiffs." However, the forty applications were never formally admitted into evidence and are not in the record before us. Therefore, it was improper for the trial judge to consider the applications. Guilbeau v. C & D Reprographics-Lafayette, Inc., 568 So.2d 206, 210 (La.App. 3rd Cir.), writ denied, 571 So.2d 653 (La.1990); Makar v. Stewart, 486 So.2d 166, 172 (La.App. 3rd Cir.1986); Thibodeaux v. Pioneer Land Development & Realty Corporation, 420 So.2d 1162, 1165 (La.App. 5th Cir.), writ granted, 423 So.2d 1178 (La.1982) (Judgment of court of appeal amended to award legal interest.) In the absence of the applications, it was impossible for the trial judge to determine whether those attorneys appointed to the PLC were qualified to serve as class counsel. Without a proper determination of their qualifications, we must reverse the trial judge's appointment of counsel to the PLC.
Because the adequacy of representation requirement was not satisfied, class certification was improper. Upon remand, the trial court should receive the evidence necessary to ensure that the named plaintiffs adequately represent the absent class members. Additionally, PLC applications should be formally introduced into evidence and placed into the record to support the trial court's selection of members to the PLC.[9]

COMMON CHARACTER
The third requirement is common character among the rights asserted. To satisfy this requirement, the mover must establish that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Dumas, 635 So.2d at 451. However, the inquiry does not end there, because the common character element encompasses more than the simple existence of law and fact common to the class. Ellis, 550 So.2d at 1315. The common character requirement "restricts class action to those cases in which it would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612, 616 (La.1984); Livingston, 598 So.2d at 1182; Ellis, 550 So.2d at 1315.
A review of the record indicates that a common character exists in the present case. Mass tort situations are particularly susceptible to inconsistent determinations. The common issues of liability of defendants predominate over the individual issues of damages and any individual defenses asserted by defendants against various subclasses of plaintiffs. Clearly it would be more efficient and economical to proceed as a class action which would result in uniformity of decision.
The supreme court has noted that "[w]hen a `common character' of right exists, a class action is superior to other available adjudicatory methods for the purpose of promoting the basic aims and goals of a procedural device: (1) effectuating substantive law; (2) judicial efficiency; and (3) individual fairness." McCastle, 456 So.2d at 616. However, "if the superiority of a class action is disputed, the trial court must inquire into the aspects of the case and decide whether the intertwined goals of effectuating substantive law, judicial efficiency, and individual fairness would be better served by some other procedural device." McCastle, 456 So.2d at 617; Dumas, 635 So.2d at 451; Adams, 615 So.2d at 482. Because the superiority of the class action has not been contested in this case, the trial judge need not inquire into the intertwined goals discussed above.

HEARING
Relators contend that the trial judge erred as a matter of law by failing to hold a hearing prior to class certification.
*772 The Louisiana Code of Civil Procedure and prevailing case law do not require a pre-certification hearing. Stevens v. Board of Trustees of Police Pension Fund of City of Shreveport, 309 So.2d 144, 152 (La.1975); Ellis, 550 So.2d at 1313. "When the right to proceed as a class action is contested, the trial court in the exercise of its discretion in applying the guidelines may need some showing in addition to the pleadings." Stevens, 309 So.2d at 152; Ellis, 550 So.2d at 1313. Thus, a hearing is not required and the trial court may, exercise its discretion and proceed without a hearing unless it deems that additional information is necessary.
Considering the lack of evidence in the record regarding adequacy of class representation, we find that the trial judge abused her discretion in ordering class certification without a hearing.

CONCLUSION
For the foregoing reasons, the orders of the trial judge granting class certification, approving class notice, appointing attorneys to the PLC and defining the class are reversed.
This case is remanded for a hearing to allow the plaintiffs/movers to introduce the evidence necessary to prove adequate representation by class representatives. During this hearing, all PLC applications should also be formally introduced into evidence and filed into the record. Additionally, the trial judge should receive evidence necessary to set the geographic boundaries of the class.
Finally, the trial judge is instructed to approve a new class notice which may permit the use of notice of claim and/or proof of claim forms only after a determination of liability. Such forms shall not require notarization. Costs of this proceeding are assessed against respondents.
REVERSED AND REMANDED.
NOTES
[1] The issue before the supreme court was whether the trial judge could appoint a PLC prior to class certification. The court did not consider whether the attorneys appointed to the PLC were qualified to serve as class counsel.
[2] The Pritchard plaintiffs originally filed a class action petition styled In Re Nitrogen Tetroxide (NZ04) Leak at Bogalusa, No. 3345-E (22nd Judicial District Court, Washington, Parish, Louisiana). This case was consolidated with the numerous lawsuits filed as a result of the chemical leak.
[3] Although there are no dates on the notice, the CMO requires that the notice of claim form be filed fifty days after the opt-out deadline.
[4] See also In Re Antibiotic Antitrust Actions, 333 F.Supp. 267, 271 (S.D.N.Y.1971) and Korn v. Franchard Corporation, 50 F.R.D. 57, 59 (S.D.N.Y.1970) (Proof of claim forms were sent with class notice.); Lamb v. United Security Life Company, 59 F.R.D. 25, 42 (S.D.Iowa 1972) (Notice of claim forms were not attached to the initial notice. However, the initial class notice warned members that at some further point they would be required to submit proof of their claim or be forever barred.); Biben v. Card, 789 F.Supp. 1001, 1005 (W.D.Mo.1992) and Harris v. Jones, 41 F.R.D. 70, 74 (D.Utah 1966) (Class members were notified after the opt-out deadline that a statement of claims was required.)
[5] Defendants joining in this motion were: Gaylord Chemical Corporation, Gaylord Container Corporation, Illinois Railroad Company, Union Tank Car Company, Vicksburg Chemical Company, Cedar Chemical Corporation and Kansas City Southern Railway Company.
[6] The judgment is captioned Holloway v. Gaylord Chemical Corporation, 73341 (22nd Judicial District Court, Washington Parish, Louisiana).
[7] The per curiam was submitted by the trial judge in Cotton v. Gaylord Chemical Corporation, 96-1347 (La.App. 1 Cir.).
[8] The June 26 judgment indicates that 38 applications were received while the July 10 per curiam indicates that 40 applications were received.
[9] The applications admitted into evidence shall include the information sought by the trial judge in the May 2, 1996 order. This information consists of a letter and resume, giving qualifications for appointment and a list of clients.