818 So.2d 125 (2001)
Karen Simeon, Wife of, and Floyd SIMEON, Jr.
v.
COLLEY HOMES INC. and Maryland Casualty Insurance Company.
No. 2000 CA 2183.
Court of Appeal of Louisiana, First Circuit.
November 14, 2001.
*126 John I. Hulse, IV, New Orleans, for Appellant Defendant Pleko Southwest, Inc.
Patrick W. Pendley, Plaquemine, Andre P. LaPlace, Baton Rouge, Gregory M. Porobil, New Orleans, Jacques F. Bezou, Covington, for Appellees Plaintiffs Karen Simeon and Floyd Simeon, Jr.
Before: FOIL, PETTIGREW and KLINE, JJ.
FOIL, J.
This appeal challenges a class action certification against a manufacturer of synthetic stucco. We hold that this action is not appropriate for class certification and reverse.

BACKGROUND
In 1994, Karen and Floyd Simeon contracted with Colley Homes, Inc. to construct a home with synthetic stucco on the entire exterior. The synthetic stucco chosen for the home is a "Pleko Therm System." The system was installed by Taylor Synthetics. Pleko Southwest, Inc. ("Pleko") is one of approximately 35 companies in the United States that manufactures some of the components used in an "EIFS," an acronym for exterior insulation finish system. A Pleko Therm System consists of four basic products: expanded styrofoam, fiberglass mesh, a base coat and an acrylic-based finish coat. Pleko manufactures the cement base coat and acrylic coat. The product is sold to distributors and contractors, who install Pleko's products, along with products manufactured by others, as part of an overall EIF system.
After moving into their home, the Simeons began experiencing water intrusion into their home, which seeped in primarily through windows and joints. On June 11, 1997, the Simeons filed this lawsuit against Colley and its insurer, alleging that Colley was negligent for improperly installing the Pleko Therm System and for failing to caulk the windows and joints. Subsequently, they amended their petition to add Pleko and Gats Masonry, Inc., Pleko's Louisiana distributor. Plaintiffs alleged *127 that the Pleko Therm System was defective, and that Pleko and Gats continued to manufacture and distribute the product knowing of the problems associated with it.
In their supplemental petition, plaintiffs asked to have their cause of action certified as a class action under Louisiana Code of Civil Procedure article 591. They defined the "class" as all persons who have or had Pleko Therm System materials on their homes in Louisiana during the proper prescriptive period. The petition also stated that the class action arose from negligence in the construction, supervision and installation of Pleko stucco systems on homes in Louisiana.
Thereafter, numerous cross claims and third party claims were filed by and among numerous persons involved in the construction of the Simeon home, each attempting to place blame for the water intrusion into the Simeon home. The builder filed third party claims against Pleko and Taylor Synthetics, alleging that Taylor was negligent for failing to caulk the windows or advise the builder as to the necessity for caulking, and also for installing the EIFS in violation of Pleko's instructions. Pleko and Gats filed cross claims against Colley and Taylor. They alleged that Colley was negligent, among other things, for failing to properly supervise the subcontractor; failing to provide flashing at doors, windows and other openings; using the wrong windows and failing to provide proper caulking and sealing. Pleko and Gats also filed third party demands against the architect whose plans failed to include any details relative to caulking, and a host of subcontractors and material suppliers on the construction project.
On November 11, 1997, plaintiffs dismissed Colley and its insurer from the lawsuit without prejudice, and Colley dismissed its claims against Pleko and Taylor. Numerous motions to sever were filed by various third party defendants. Trial judge Patricia Hedges granted the motions to sever, observing that plaintiffs' pleadings would not be jeopardized by the elimination of the third party demands. She stated that the individual and construction-based claims had to be severed from the potential class action claims in order to streamline the original suit. In severing the claims, the judge stressed that the jury could still assign a percentage of fault to the former third party defendants in the main lawsuit. This court declined to exercise supervisory jurisdiction over this decision.
Prior to trial, plaintiffs severed their claims against all parties except Pleko. A four-day trial was held on the issue of the propriety of the class action, during which numerous individuals involved in the construction industry testified. Following the conclusion of the evidence, the trial judge granted the class certification to the Simeons to serve as representatives of the class of homeowners with the Pleko stucco system on their homes. In written reasons for judgment, the judge found that the numerosity element for class certification had been met, stressing that defense counsel admitted that there were thousands of homes in Louisiana with Pleko on them. The judge further found that common questions of law or fact predominated over individual questions, observing that all third party claims had been severed and plaintiffs had withdrawn their claims against the general contractor and its insurer. The judge noted that the evidence showed that houses built with the Pleko stucco system exhibited problems with moisture being trapped inside the walls causing structural damage to the wood framing of the building. Ultimately, the judge concluded that since the putative plaintiffs would be only those with the *128 Pleko system on their homes and buildings, and since the issue was whether the manufacturer was negligent in the manufacture, supervision and installation of this one system, the requirement of common issues of law and fact was met.
This appeal, taken by Pleko, followed.

PROPRIETY OF THE CLASS ACTION
The class action is a procedure that permits a representative with typical claims to sue on behalf of a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court. Ford v. Murphy Oil U.S.A., Inc., 96-2913, 96-2917, 96-2929, p. 4 (La.9/9/97), 703 So.2d 542, 544. The prerequisites for a class action are set forth in La.Code Civ. P. arts. 591 and 592. The requirements are: (1) a group of persons so numerous as to make it impractical for all of the persons to join or be joined as parties; (2) the joinder of parties who are members of the class and able to provide adequate representation for absent members and (3) a common character between the rights of the representatives of the class and the absent members. Carr v. Houma Redi-Mix Concrete Co., Inc., 96-1548, pp. 2-3 (La.App. 1 Cir.11/10/97), 705 So.2d 213, 214, writ denied, 98-0743 (La.5/1/98), 718 So.2d 416.
Pleko argues that the plaintiffs failed to establish that any of the requirements for maintaining a class action were present. Because we agree that plaintiffs failed to establish the third requirement, we pretermit discussion of all other issues raised by Pleko in this appeal.
In order to satisfy the "common character" requirement, the mover must establish that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Cotton v. Gaylord Container, 96-1958, p. 18 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, 771, writ denied, 97-0800 (La.4/8/97), 693 So.2d 147. The common character element encompasses more than the simple existence of law and fact common to the class. It restricts the class action to those cases in which it would achieve the economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness bringing about other undesirable results. Id. at p. 19, 691 So.2d at 771. When the superiority of a class action is disputed, a court must inquire into the facts and circumstances of a case in order to determine whether the goals of a class action would be better served by another adjudicatory method. Elliott v. State, 619 So.2d 137, 139 (La.App. 1st Cir.), writ denied, 625 So.2d 1034 (La.1993).
Plaintiffs contend that the evidence established that Pleko's product is inherently defective. They do not claim that a Pleko Therm System is not waterproof or that the system itself fails to keep water out of a residence on which it is installed. Instead, they argue, it is the very nature of the system, its complete imperviousness to water, that forms the basis of the system's defect. They contend that even when a Pleko Therm System is installed perfectly, it is inevitable that at some point, for whatever reason (such as a leaky window or other opening) situated in the system itself or because of physical damage to the home, water will make its way behind the exterior of the Pleko system and create a moisture condition on the interior. This damage results, they contend, because the Pleko system does not have a secondary moisture barrier to protect against such negligently caused or "happenstance" water intrusions. Furthermore, the system is defective, they insist, because it lacks any means by which intrusive water would be allowed to escape the waterproof *129 barrier and thereby avoid damage to the home. They contend that these defects are inherent in every Pleko system and the trial court found issues of law or fact common to each putative member class regardless of the facts and circumstances surrounding the installation. They also submit that Pleko was negligent in failing to provide proper training to those certified to install the Pleko system.
The evidence demonstrated that because a Pleko Therm System is indeed a water barrier, Pleko's installation instructions require that wherever Pleko comes into contact with a dissimilar surface such as a window or door frame, some provision must be made for caulking the joint between the dissimilar surfaces. Pleko's specifications require that the gap between the two surfaces be bridged by a backer rod (a piece of rope made out of foam), which is installed in the gap. The gap must thereafter be sealed with caulking or other sealant. The evidence established that if the backer rod and sealant were not installed on a home with a Pleko Therm System, there would be a hole in the system into which water could penetrate.
William Locke, an expert EIFS installer and repairer, attested that water intrusion into the Simeon home was not the result of a failure of the Pleko system itself. Rather, he acknowledged that three primary errors accounted for the water intrusion, which were in violation of Pleko's installation instructions. First, he noted, was the complete absence of any caulking on any of the windows. Secondly, the kick-out flashing, which is intended to divert water at the bottom of the flashing to run to the outside of the stucco wall instead of going behind the wall, was too small and was also bent, which could have allowed water to enter the walls. Thirdly, Mr. Locke observed that there was inadequate clearance between the Pleko system and the Simeons' flower bed, which created a "wicking up" effect by which water gets sucked into the substrate of the home.
The evidence also showed that David Breath, the architect on the Simeon home who recommended the use of synthetic stucco, failed to include any details for caulk joints or specifications for backer rods in the plans. He also did not include details for sealing the windows and doors anywhere in the drawings, nor did he include details for kick-out flashing. Even plaintiffs' expert architect witness attested that the architect's failure to include such details in a home on which synthetic stucco was to be installed was a "blatant defect."
Lucian Lyssy, a Pleko installer since 1984 and expert witness in EIFS installation, testified that he worked on over 700 EIFS projects and never had one instance of water entry. This and other evidence demonstrated that a properly installed Pleko Therm System will keep water out of a residence.
The evidence thus showed that the proper functioning of a Pleko Therm System depends on the interaction of different trades. Although the trial court severed all of the construction-based claims against others alleged to be at fault for allowing water to intrude into the Simeon home, the evidence adduced at the certification hearing demonstrates that these issues will remain viable in the class action litigation. The role played by any third parties such as builders, architects and EIFS applicators in connection with the water intrusion is relevant to the issues of liability, causation and comparative fault on Pleko's part for failing to install a secondary moisture barrier or drain system. The fact that the third party claims have been severed is of no moment, as Pleko is clearly entitled to assert the fault of nonparties in the EIFS litigation. See La. Civ.Code art. 2323, La. Code Civ. P. art. 1812 C(2)(a).
Considering all of the circumstances of this case, we find that individual issues *130 clearly predominate over issues common to the class. Each of the homes involved would have been constructed by a different set of contractors under different contractual arrangements. Individual inquiries would have to be made into the source of water entry and the severity of the damage. These "house specific" issues would implicate testimony from a host of different builders, contractors, subcontractors, installers and material suppliers. In addition to the individualized issues related to the role of third parties in causing the water damage, the question of compensation for damage to the homes will raise further individualized issues such as the extent of damage, the type of repair needed on each house and the costs of the repairs.
Although we are mindful that the trial court has much discretion in certifying a class action, Carr v. Houma Redi-Mix Concrete Co., Inc., 96-1548 at p. 3, 705 So.2d at 215, we find that plaintiffs failed to establish the common character requirement for maintaining a class action. Therefore, we find the trial judge erred in certifying the class action.

CONCLUSION
Based on the foregoing, the judgment certifying the class action is reversed. This case is remanded to the trial court to conduct proceedings not inconsistent with this opinion. Costs of this appeal are assessed to appellees.
REVERSED AND REMANDED.
Judge WILLIAM F. KLINE, Jr., Retired, serving Pro Tempore by special appointment of the Louisiana Supreme Court.