864 So.2d 880 (2004)
Kentrisha DAVIS, John Mierl, Phyllis Brown, Carolina Mendoza, Mark Maier, Lois Irick, and Karen Porter
v.
JAZZ CASINO COMPANY, L.L.C.
No. 2003-CA-0005.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 2004.
Rehearing Denied February 6, 2004.
*884 Peter J. Butler, Peter J. Butler, Jr., Richard G. Passler, Jeffrey C. Vaughan, Breazeale, Sachse & Wilson, L.L.P., New Orleans, LA, for Plaintiffs/Appellees.
Leslie A. Lanusse, William J. Kelly III, Robert E. Couhig, Jr., Louis C. LaCour, Jr., Raymond P. Ward, Adams and Reese LLP, Harry T. Lemmon, New Orleans, LA, for Defendants/Appellants.
(Court composed of Judge JAMES F. McKAY, III, Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD).
TERRI F. LOVE, Judge.
The defendants, Jazz Casino Company, L.L.C., appeal the trial court's judgment, which granted class certification in favor of the plaintiffs. We affirm for the following reasons:

Statement of Facts and Procedural History
Approximately one hundred and forty-eight plaintiffs filed a lawsuit against the Jazz Casino Company, L.L.C. ("JCC"), *885 which alleged that JCC's termination of their employment violated a unilateral contract to employ them for at least four years after April 1, 2001. At the time, JCC sought Chapter 11 bankruptcy protection and a tax reduction from the state to relieve some its financial woes. The class alleges that JCC required that they actively lobby the state legislature in order to secure tax relief on behalf of the casino. The class alleges that JCC guaranteed that if the legislature granted tax relief to the casino, the plaintiffs would be employed for the length of time that the tax relief was in effect. The class argues that JCC made it clear to them via various written communications and meetings; that if the tax relief were not secured from the state, then Harrah's Casino would close and they would lose their jobs.
As part of the lobbying process, the plaintiffs contend that they were required to participate in letter writing campaigns in addition to talking to the legislature and the media about obtaining a reduction in Harrah's tax obligation. The class alleges that the oral and written communications from Harrah's constituted an offer in which their participation in the lobbying and media campaign was an acceptance of the offer, which resulted in the formation of a unilateral contract. In April 2001, the state legislature granted the casino tax relief for a four-year period. This tax relief resulted in a reduction of the casino's tax obligation from $100,000,000.00 to $50,000,000.00 in the first year and $100,000,000.00 to $60,000,000.00 for years two through four. In July 2001, the plaintiffs were terminated. Harrah's Casino asked all of the class members to sign a separation agreement, which only entitled them to receive a week's salary in exchange for relinquishing all rights including their rights to compensation for the four-year tax relief period.
The plaintiffs filed a petition for breach of contract and damages with a jury demand against JCC, which alleged breach of a unilateral contract and claiming that the separation agreement was contra bonos mores or executed under duress and therefore, should be declared null and void. The plaintiffs also filed a motion for certification as a class action, which was granted by the trial court. JCC filed an order of suspensive appeal, which contended that certification of the plaintiffs as a class would cause irreparable injury. The trial court granted the order for suspensive appeal.

Discussion
JCC contends that the trial court erred in certifying the class based on the plaintiffs failure to make a prima facie showing that all of the class certification prerequisites were met.
A class action is nothing more than a procedural device. It confers no substantive rights. The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the class representatives who bring the action, but to all others who are similarly situated, provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion there from. La. C.C.P. art. 597; Williams v. State, 350 So.2d 131, 137-38 (La.1977).
Louisiana courts have vast discretion to determine whether to certify a class. See Billieson v. City of New Orleans, 98-1232, p. 8 (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 152-53. A trial court must be afforded wide latitude when making factual and policy determinations as to the appropriateness of a class. The decision of the trial court, therefore, should not be reversed absent manifest error. See *886 Adams v. CSX Railroads, 615 So.2d 476 (La.App. 4th Cir.1993).
Louisiana trial courts are afforded broad discretion in determining the class certification issues, and have wide latitude in considerations involving policy matters, and those requiring a preliminary analysis of the facts. Davis v. American Home Products Corp., XXXX-XXXX (La.App. 4 Cir. 3/26/03) 844 So.2d 242, 257.
The purpose and intent of the class action is to "adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are similarly situation." See Ford v. Murphy Oil U.S.A., Inc., 96-2913 p. 4 (La.9/9/97), 703 So.2d 542, 544. The trial court's decision therefore must not be reversed absent manifest error. See Adams v. CSX Railroads, 615 So.2d 476 (La.App. 4th Cir. 1993).
Recently, there has been a tendency to require class certification when the statutory requirements have been met. See Billieson v. City of New Orleans, 98-1232, p. 8 (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 152-53. This places the burden on the party seeking the class certification to demonstrate that all of the necessary elements for the certification exist. Specifically, the plaintiff must show that the class is definable and that it satisfies the requirements of numerosity, commonality, typicality and adequacy of representation. Billieson, 98-1232, p. 8, 729 So.2d at 152. The plaintiff must also demonstrate that the class action procedure is superior to other forms of adjudication.
Louisiana Code of Civil Procedure Articles 591-597 governs the class action procedure. Article 591(A) provides the general rule for certification of a class. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class;
(4) The representative parties will fairly and adequately protect the interests of the class; and
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
If all of these criteria are not met, then the class should not be certified.
In its written reasons for judgment, the trial court stated:
This Court has allowed the parties to do extensive discovery regarding class certification issues. The parties have conducted written discovery and Defendant deposed all Plaintiffs sought to be made class representatives. The court has reviewed the pleadings, memoranda, the written discovery and transcripts of the deposition testimony of the class representatives as well as the entire record of this proceeding and is satisfied that the elements provided for by Articles 591(A)(1) through (5) and (B)(3) of the Louisiana Code of Civil Procedure are clearly satisfied. The court intends to maintain this class action as one pursuant to Article 591(B)(1).
With respect to Article 591(A), the court finds:
(1) The potential class is numerous enough, there being approximately 148 members of the class.

*887 (2) Common issues of facts and law exist, primarily the factual and legal relevance of Defendant's communications to the class members. A key issue is whether Defendant's communications were sufficient to form the basis of a unilateral contract or commitment of employment.
(3) The named class representatives claims are typical of [t]he class. Those claims arise out of the same alleged conduct of Defendant and rely on the same legal theory.
(4) There has been presented no reason as to why the named class representatives or proposed class counsel are inadequate to represent the class representatives or proposed class counsel are inadequate to represent the class and none appear from the record.
(5) The class is objectively defined because it consists of an objectively identifiable group.
With respect to Article 591(B)(1), the court finds:
As pointed out above, common issues of fact and law exist, primarily the factual and legal relevance of Defendant's communications to the class members, i.e. whether those communications were sufficient to form the basis of a unilateral contract and/or commitment of employment. There is evidence that absent certification of a class herein individual lawsuits will be brought. Certainly, individuals prosecuting separated actions on their own behalf under the facts and law at issue could conceivably result in varying interpretations. Such differing results have the effect not only of establishing different standards of conduct with respect to Defendant's alleged actions, but will almost inevitable affect the interests of other class members and impede their ability to protect those interest.
We agree with the trial court's reasoning.

Numerosity
The defendant asserts that joinder is appropriate in this case, because none of the proposed class members have stated that they would not bring forth an individual claim if the trial court denied class certification.
The first prerequisite for maintaining a class action established by La. C.C.P. art. 591(A)(1) is that the members of the class be so numerous that joinder is impracticable; this is sometimes called the "impracticality" or "numerosity" requirement. The numerosity requirement has been explained as follows:
This requirement reflects the basic function of the class action as a device for allowing a small number of persons to protect or enforce rights or claims for the benefit of many where it would be inequitable and impracticable to join every person sharing an interest in the rights or claims at issue in the suit.
Kent A. Lambert, Certification of Class Actions in Louisiana, 58 La. L.Rev. 1085 (1998).
Generally, a class action is appropriate whenever the interested parties appear to be so numerous that separate suits would unduly burden the courts, and a class action would "clearly be more useful and judicially expedient than the other available procedures." Cotton v. Gaylord, 96-1958 p. 13 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, 768. Determination of whether this requirement has been fulfilled depends on the facts and circumstances of each individual case. Cotton, 96-1958, p. 13, 691 So.2d at 768; Dumas v. Angus *888 Chemical Co., 25,632, p. 5 (La.App. 2 Cir. 3/30/94), 635 So.2d 446, 450.
No set number of plaintiffs is required in order to fulfill this requirement. Davis, XXXX-XXXX, p. 19, 844 So.2d at 257, citing Cotton, supra 691 So.2d 760. In fact, difficulty in identifying the claimants is one of the factors that make joinder impracticable and a class action appropriate; thus, the plaintiffs are not required to identify every member of the class prior to certification. Davis, XXXX-XXXX, p. 19, 844 So.2d at 257. The class must, however, be definable. Dumas, 635 So.2d at 450.
The determination of numerosity in part is based upon the number of putative class members, but is also based upon considerations of judicial economy in avoiding a multiplicity of lawsuits, financial resources of class members, and the size of the individual claims. Davis v. American Home Products Corp., XXXX-XXXX, p. 19 (La.App. 4 Cir. 3/26/03) 844 So.2d 242, 257.
In the instant case, it is alleged that approximately one hundred and forty-eight employees of Harrah's Casino were fired after the tax reduction was obtained from the state. The class is limited to that number of people. The plaintiffs argue that out of the one hundred and forty-eight potential class members approximately sixty have agreed to become a part of the class action. If joinder is a practical alternative, then the class should not be certified. The record reflects that there are a sufficient number of class members. Since there are a significant number of plaintiffs involved in this case, joinder would be an impractical alternative. We find that the plaintiffs have satisfied the numerosity requirement for class certification.

Adequacy of Representation and Typicality
The second prerequisite for maintaining a class action is proof of adequate representation for the absent class members. This element requires that the proposed class representatives prove that their claims are "a cross-section of, or typical of, the claims of all class members." Johnson v. Orleans Parish School Board, XXXX-XXXX (La.App. 4 Cir. 6/27/01) 790 So.2d at 734, quoting Andry v. Murphy Oil, U.S.A., Inc., 97-0793, p. 6 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1130.
The following are "factors which may be relevant" to the adequacy of representation inquiry:
(1) The representative must be able to demonstrate that he or she suffered an actualvis-à-vis hypotheticalinjury;
(2) The representative should possess first hand knowledge or experience of the conduct at issue in the litigation;
(3) The representative's stake in the litigation, that is, the substantiality of his or her interest in winning the lawsuit, should be significant enough, relative to that of other class members to ensure that representative's conscientious participation in the litigation; and
(4) The representative should not have interests seriously antagonistic to or in direct conflict with those of other class members, whether because the representative is subject to unique defenses or additional claims against him or her, or where the representative is seeking special or additional relief.
Kent A. Lambert, Certification of Class Actions in Louisiana, 58 La. L.Rev. 1085 (1998).
The record shows that each of the representatives of the class allege that they entered into a unilateral employment contract with the defendant, JCC, for a period of four years. The representatives *889 also argue that each one of them attended mandatory meetings led by Harrah's management team. The representatives testified that in the mandatory meetings Harrah's management team consistently promised that if the employees helped Harrah's obtain the tax reduction there would be no lay-offs and the employees would keep their jobs for the duration of the tax reduction. Each class representative also alleges that in July of 2001, contrary to the unilateral employment contract, they were laid off from their jobs. The class representatives' claims are typical of all class members, therefore they are adequate representatives of the class.
The element of typicality requires that the claims of the class representatives be a cross-section of, or typical of, the claims of all class members. Andry v. Murphy Oil, U.S.A., Inc., 97-0793, p. 5 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1129. Louisiana jurisprudence does not require a "Noah-like" tabulation of class representatives and claims. Johnson v. Orleans Parish School Board, XXXX-XXXX, p. 10 (La.App. 4 Cir. 6/27/01), 790 So.2d 734, 742. The plaintiffs are not required to produce two, or even one, of every kind of claim or of every person included in the class. The law only requires that the plaintiffs "typically" and "adequately" demonstrate that they represent a cross-section of the claims asserted on behalf of the class. Johnson, XXXX-XXXX, p. 10, 790 So.2d at 742; Andry, 97-0793 at p. 6, 710 So.2d at 1131.
The defendants argue that the class representatives do not have claims typical of one another and only demonstrate that each one of their claims is unique. We disagree.
The representatives of the proposed class allege that their claims are based on Harrah's communications during the mandatory meetings and other interactions with Harrah's management team during a specific period of time. The representatives' claims rely on the same legal theory based on whether Harrah's communications in various manners and at various times constituted the formation of a unilateral contract. Based on the record, we find that the typicality criterion is satisfied.

Commonality
JCC argues that each plaintiff must rely on facts that are unique to each one of their claims. Specifically, JCC alleges that the trial court must engage in a highly individualized inquiry into the oral representations allegedly made by JCC on several different occasions to different plaintiffs to determine whether the elements of a contract were met. Therefore, common issues do not prevail over individual issues in this case.
The requirement of commonality is met when the common questions of fact and law predominate over issues or defenses affecting only individual class members. See Cotton v. Gaylord Container, 96-1958, p. 19 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, 771. The Supreme Court of Louisiana has concluded that when the plaintiffs' individual liability issues predominate over the issue of the defendant's duty, a class action certification is not appropriate. See Banks v. New York Life Insurance Co., 98-0551 (La.7/2/99), 737 So.2d 1275, 1281, cert. denied, Major Banks v. New York Life Insurance Co., 528 U.S. 1158, 120 S.Ct. 1168, 145 L.Ed.2d 1078 (2000). When there are a myriad of individual complaints that ultimately will require plaintiff-by-plaintiff adjudication of liability issues, this will militate against a finding of predominance of common character and the superiority of the class action procedure. Banks, 98-0551, 737 So.2d at 1281. If the plaintiffs' *890 claims are such that individual adjudication will be required, the basic purpose of the class action judicial economy will be thwarted. Therefore, it is important for the court to insure that the common issues in the case predominate before it certifies the class.
The requirement of a "common character" restricts the class action to those cases in which it would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situation. See McCastle v. Rollins Environmental Services of La., 456 So.2d 612, 616 (La.1984). When a common character of rights exists, a class action will be superior to other adjudicatory methods in effectuating substantive law, promoting judicial efficiency and individual fairness.
Once the damage has occurred and the class solidified, the tortfeasor cannot thereafter escape liability by correcting the problem with respect to some members of the class, and then claiming that damages as to those class members have ceased. Chamberlain v. Belle of New Orleans, XXXX-XXXX p. 5 (La.App. 4 Cir. 4/7/99),731 So.2d 1033, 1035.
We find that a "common character" of rights exists in this case and the typicality requirement is satisfied. This court established in McCastle that situations involving multiple or long-term incidents do not preclude class certification. McCastle v. Rollins Environmental Services of La., 456 So.2d 612, 616 (La.1984). In McCastle, a class action was brought against the operator of a chemical waste disposal site. The plaintiffs alleged that the activities of the defendant between 1980 and 1981 caused them to suffer physical injuries. In McCastle, each plaintiff would be required to individually show that the defendant's conduct injured him or her in some way. However, this Court held that the plaintiffs met the "commonality" requirement because they were all injured by the same conduct. The fact that this conduct occurred during a period of one year, rather than involving one incident, did not preclude this Court from certifying the class in McCastle. McCastle, 456 So.2d at 616.
The instant case is similar to McCastle as well. The class members in this case claim that they were all injured by the same conduct. Although they must prove individual injuries, they allege that their injuries were caused by the same "common" conduct. Each member of the class in this case alleges that they participated in the meetings led by Harrah's Employee Action Team ("HEAT"). Each of the class members alleges that HEAT repeatedly pledged to honor Harrah's promise of job security whereby the employee's term of employment was to be measured by the number of years in which the state granted Harrah's a tax reduction. The class members also allege that they participated in letter writing campaign to the legislature and they were also told what to say to the media and to the legislature. Each of the class members argues that a unilateral contract was formed for a specific term of employment on April 1, 2001, when the legislature granted Harrah's the reduction in its tax obligation.
According to the unilateral contract, the term of employment was to end upon the expiration of the four-year tax relief from the State. The claims are asserted against one defendant, Jazz Casino Company, L.L.C., which owns Harrah's Casino. The class was solidified between April 1, 2001, when the tax reduction was granted to Harrah's, and July 17, 2001, when all of the class members were laid off. There are no unique facts for each member of the class.
*891 Furthermore, individual questions of quantum may differ among each member of the class, but the "common character" of rights exists to justify the trial court's certifying this suit as a class action. Mayho v. Amoco Pipeline Co., 99-620 (La.App. 4 Cir. 12/15/99), 750 So.2d 278. Even though the trial court certified this case as class action, the trial court still has the discretion to amend or recall certification under La. C.C.P. art. 592.
Therefore, we hold that plaintiffs have demonstrated that the claims asserted are of common character between the class representatives and the class members as a whole. Based on the existence of common character between the class members, a class action serves the court's goal of "(1) effectuating substantive law; (2) judicial efficiency; and (3) individual fairness." Chamberlain v. Belle of New Orleans, XXXX-XXXX p. 6 (La.App. 4 Cir. 4/7/99), 731 So.2d 1033, 1036 citing McCastle v. Rollins Environmental Services of La., 456 So.2d 612, 620(La.1984).

Definition of the Class
Harrah's argues that the plaintiffs do not define with specificity which individuals would be included or excluded from the proposed class. We disagree.
Definability of the class by objective criteria is essential given the res judicata effect of the class action procedure. A precise geographic definition of the class is not absolutely necessary. In light of the purpose of the class action procedure, it is objectively reasonable for the geographic area to be defined broadly so as to encompass all potential class members. See Andry, 710 So.2d at 1130.
The trial court stated that the proposed class is limited to the one hundred and forty-eight employees, who were terminated without cause on July 17, 2001. Contrary to the defendant's argument, the proposed class is sufficiently defined in order to give potential class members enough information to decide whether they are included within the class and to enable class members to decide whether to opt out of the class. Therefore, the plaintiffs have satisfied the definability requirement necessary for class certification.
JCC also asserts that the trial court erred in certifying the case as a class action based on the lack of trial plan. This argument has no merit. The record contains two class certification scheduling orders in addition to several amendments to those orders, which govern time limitations and the parameters of discovery process in the instant case.
Based on the foregoing, we find that plaintiffs have fulfilled both the statutory and jurisprudential requirements for a class action. If an error is to be made, it should be in favor of, and not against the maintenance of, the class action because the class is always subject to modification should later development during the course of the trial so require. Davis v. American Home Products Corp., XXXX-XXXX (La.App. 4 Cir. 3/26/03) 844 So.2d 242.
A certification hearing does not determine liability. Davis, 844 So.2d at 253. It is not the correct venue to decide the merits of the case or defenses the defendants may allege. Those matters are to be resolved at the trial on the merits.
Accordingly, the trial court judgment is affirmed.
AFFIRMED.