917 So.2d 463 (2005)
Mark E. ANDREWS, on Behalf of Himself and Others Similarly Situated
v.
TRANS UNION CORPORATION.
No. 2004-CA-2158.
Court of Appeal of Louisiana, Fourth Circuit.
August 17, 2005.
Rehearing Denied November 23, 2005.
*465 Dawn Adams Wheelahan, New Orleans, Steven J. Lane, Stephen J. Herman, David K. Fox, Soren E. Gisleson, Herman, Herman, Katz & Cotlar, L.L.P., New Orleans, Counsel for Plaintiff/Appellee.
Roger L. Longtin, Michael O'Neil, Peter J. Donoghue, Piper Rudnick, Chicago, IL, John H. Beisner, Brian P. Brooks, Morgen Sullivan, O'Melveny & Myers LLP, Washington, DC, Glenn P. Orgeron, Lemle & Kelleher, L.L.P., New Orleans, Counsel for Defendant/Appellant.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY).
JAMES F. MCKAY, Judge.
The defendant, Trans Union LLC (Trans Union), seeks review of the trial court's class certification in this matter. We affirm.

FACTS AND PROCEDURAL HISTORY
Trans Union is one of three major consumer credit reporting agencies in the United States. Its core business is assembling and evaluating consumer credit information, including credit and payment patterns on consumers for the purpose of selling credit reports to third parties. The disclosure of the information contained in these reports is regulated by the Fair Credit Reporting Act (FCRA) 15 U.S.C.A. § 1681 et seq., and residual state law.
In the early 1990's, Trans Union engaged in target marketing. Target marketing refers to the sale of certain consumer information by consumer reporting agencies to third parties such as charitable organizations, political groups, and commercial businesses for purposes of targeting the purchaser's marketing and other outreach efforts to individuals most likely *466 to be interested in its products, services or messages. In 1990, the Federal Trade Commission (FTC) notified the three major consumer reporting agencies that the sale of information derived from their credit reporting databases for the purpose of target marketing violated the FCRA. After the FTC issued its order, a number of federal civil actions were filed, alleging various federal and state law claims against Trans Union. These actions have been consolidated in a multidistrict proceeding for discovery and disposition of pre-trial matters.
Mark E. Andrews, the named plaintiff, filed the instant action in state court for Louisiana claimants who bring actions for (1) Trans Union's violation of La. R.S. 9:3571.1 which provides at subsection G(3) that a violation of the FCRA shall be presumptive evidence that the defendant failed to exercise ordinary care and due diligence; and (2) unjust enrichment, seeking disgorgement of profits that Trans Union unlawfully earned, and has unjustly retained, from its sale of information in plaintiffs' private consumer credit files to target marketers. Another putative class action was filed in federal court in Louisiana. The trial court certified the action in state court and it is that class certification that Trans Union now appeals.

DISCUSSION
On appeal, the defendant raises the following assignments of error: 1) the district court's order certifying a class of Louisiana claimants must be reversed in light of a new putative Louisiana class action filed by plaintiff's counsel in federal court, reflecting the tacit admission of counsel that their omission of federal claims here renders this action inadequate to protect the legal interests of putative class members; 2) the district court abused its discretion in concluding that common issues would predominate in a class trial in which the parties will dispute whether individual claimants had legally protected privacy interests in varying types of disclosures provided in different list products over a twelve-year period; 3) the district court erred in failing to recognize that the FTC's administrative resolution of Trans Union's target marketing business precluded the "superiority" finding required to justify class certification; 4) the district court erred in finding that the named plaintiff's claims are typical of the claims of other putative class members; and 5) the district court erred in certifying an impermissible "failsafe class" and certifying a class without a trial plan.
Generally, a class action is appropriate whenever the interested parties appear to be so numerous that separate suits would unduly burden the courts, and a class action would clearly be more useful and judicially expedient than the other available procedures. Doerr v. Mobil Oil Corp., XXXX-XXXX (La.App. 4 Cir. 2/27/02), 811 So.2d 1135, 1143. Louisiana courts have vast discretion to determine whether to certify a class. Davis v. Jazz Casino Co., L.L.C., XXXX-XXXX (La.App. 4 Cir. 1/14/04), 864 So.2d 880, 885, citing Billieson v. City of New Orleans, 98-1232 (La. App. 4 Cir. 3/3/99), 729 So.2d 146, 152-153. Louisiana trial courts are afforded broad discretion in determining the class certification issues, and have wide latitude in consideration involving policy matters, and those requiring a preliminary analysis of the facts. Davis at 886. Any errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action, because a class certification order is subject to modification, if later developments during the course of the trial so require. Daniels v. Witco Corp., 03 1478 (La.App. 5 Cir. 6/1/04), 877 So.2d 1011.
*467 Louisiana Code of Civil Procedure Articles 591-597 govern class action procedure. In order to meet class certification requirements under Louisiana law, plaintiffs must meet all of the requirements of La. C.C.P. art. 591(A) and fall within one of the subsections of 591(B). Id. Louisiana Code of Civil Procedure Article 591 provides:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions:
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class:
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.

*468 C. Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class. However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class.
La. C.C.P. art. 591.
In its first assignment of error, Trans Union argues that the filing of a separate federal action by another plaintiff, who is represented by same counsel as the representative plaintiff here, renders the representative plaintiff in this action inadequate. However, there must be identity of parties, acting in the same capacity, before the action taken by litigants in one case will affect claims in a different case. Burguieres v. Pollingue, XXXX-XXXX (La.2/25/03), 843 So.2d 1049. Furthermore, in the instant matter, the presiding district judge in the federal multidistrict litigation remanded this action to Louisiana state court because he believed state court was the proper forum for resolution of state law claims.
Adequacy is a primary requirement for certification where the class representatives must be adequate advocates for the class. La. C.C.P. art. 592. The representatives' claims must be a cross section of, or typical of the claims of the other class members. Adams v. CSX Railroads, 92-1077 (La.App. 4 Cir. 2/26/93), 615 So.2d 476, 482. The plaintiffs are not required to produce two, or even one, of every kind of claim or of every person included in the class. The law only requires that the plaintiffs "typically" and "adequately" demonstrate that they represent a cross-section of the claims asserted on behalf of the class. Doerr v. Mobil Oil, XXXX-XXXX (La.App. 4 Cir. 2/27/02), 811 So.2d 1135.
In the instant case, the representative's claim is typical of all class members' claims, in that all claims arise from an identical course of misconduct by a single defendant, Trans Union. All plaintiffs seek relief under identical legal theories based on facts common to all. Louisiana law attributes the attorney's fees in class actions solely to the representative plaintiff. Therefore, whether or not he seeks them is of no consequence to the other class members. As such, the representative plaintiff in the instant case typically and adequately represents a cross-section of the claims asserted on behalf of the class; all plaintiffs in this purported class bring identical claims, relying on identical legal and remedial theories, based on Trans Union's uniform actions as to all.
In its second assignment of error, Trans Union contends that the district court improperly disregarded the individualized factual and legal questions that would predominate in any class trial. When there are a myriad of individual complaints that ultimately will require plaintiff-by-plaintiff adjudication of liability issues, this will militate against a finding of predominance of common character and the superiority of the class action procedure. Banks v. New York Life Insurance Co., 528 U.S. 1158, 120 S.Ct. 1168, 145 L.Ed.2d 1078 (2000). However, that is not the situation we are presented with in the instant case. This action concerns only Trans Union's target marketing business. All of the plaintiffs in the proposed class are individuals who have had some type of consumer information about them sold by Trans Union to third parties. The exact information sold and the actual buyers of this information will not be the same for every individual but all the individuals would have the same basic complaint that their legally protected privacy interests *469 had been violated. Therefore, common issues will predominate in a class trial. Accordingly, Trans Union's second assignment of error is without merit.
The defendant's argument that the FTC's administrative enforcement action regarding Trans Union's target marketing business precludes the superiority finding required to justify class certification in this action is without merit. In fact, Trans Union's argument has been rejected by federal courts on more than one occasion. In Swecker v. Trans Union Corp., 31 F.Supp.2d 536 (E.D.Va.1998), the court found that where plaintiff alleged state law causes of action and chose not to pursue available remedies under the FCRA, the federal defense of preemption of the particular state law cause of action alleged did not provide federal jurisdiction or preempt plaintiff's state law claim. In Watkins v. Trans Union, LLC, 118 F.Supp.2d 1217 (N.D.Ala.2000), the court found that the FCRA evidences no intent on the part of Congress to grant defendants such as Trans Union the extraordinary ability to recharacterize state law claims as federal causes of action.
In its fourth assignment of error, the defendant contends that the district court erred in finding that the named plaintiff's claims are typical of the claims of other putative class members. Typicality is satisfied if the claims of the class representatives arise out of the same event, practice, or course of conduct that gives rise to the claims of other class members and those claims are based on the same legal theory. Singleton v. Northfield Ins. Co., 01-0447 (La.App. 1 Cir. 5/15/02), 826 So.2d 55. In the instant case, Mr. Andrews's claim arises out of Trans Union's target marketing, the same practice that gives rise to all of the other putative class members' claims against Trans Union. All of the putative class members' claims are also based on the same theory of law. Accordingly, we find no merit in the defendant's fourth assignment of error.
In its final assignment of error, Trans Union contends that the district court erred in certifying an impermissible "failsafe class" and certifying a class without a trial plan. The lack of a trial plan in and of itself is no reason to deny certification. See Davis v. Jazz Casino Company, L.L.C., XXXX-XXXX (La.App. 4 Cir. 1/14/04), 864 So.2d 880. Louisiana's class action articles do not require that plaintiff submit a trial plan where there are no complicated or individualized issues to try. Furthermore, Trans Union's argument regarding the alleged "failsafe class" is without merit. The class is objectively ascertainable because certain list products are permissible under the FCRA while others are not. Only those whose names appear on one of the impermissible lists are included in the class.

DECREE
For the foregoing reasons, we affirm the trial court's class certification in this case.
AFFIRMED.
MURRAY, J., dissents with reasons.
MURRAY, J., dissenting.
For the reasons that follow, I respectfully dissent from the majority's finding that the trial court did not abuse its discretion in certifying the class at issue herein.
La. C.C.P. art. 591 A, unlike its counterpart federal Rule 23, contains an express "identifiability" requirement; it requires that the class be defined "objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for the purposes of the conclusiveness of any judgment that may be *470 rendered." La. C.C.P. art. 591 A(5). Although federal Rule 23 contains no express "identifiability" requirement, the well-settled federal jurisprudence has read into Rule 23 such a requirement. Explaining the implicit identifiability requirement, a commentator notes:
[F]ederal courts have generally concluded that a class is identifiable if, from the description of the class in the complaint, the court can determine whether a particular individual is a member. This implied requirement is said to serve two purposes: (1) it assists both the court and the litigants in ascertaining the manageability of the proposed class action; and (2) it ensures that the parties whose rights or interests are at stake will be the recipients of any relief. Furthermore, because the outcome of the putative class action will be res judicata as to all unnamed members, the definition of the class must not be vague or difficult to apply; courts therefore commonly require that membership be "capable of ascertainment under some objective standard." Thus, for example, the class definition cannot depend upon the individual members' state of mind.
Kent A. Lambert, Certification of Class Actions in Louisiana, 58 La. L.Rev. 1085, 1110-1111 (1998).
The "identifiability" requirement also precludes defining the class based upon a legal determination of the ultimate issue. 6 Alba Conte and Herbert Newberg, Newberg on Class Actions § 18:46 (4th ed.2002). "Such a definition is circular in that it presumes success on the merits in order simply to be a class member at the outset, and a court would be justified in holding that such a class definition is invalid because one could not determine who would be in the class for notice purposes until after trial." Id. This type of circularly defined class is generally referred to as a "fail-safe" class.
A "fail-safe" class is one that is defined in terms of an ultimate issue of liability. The definition of the class predetermines liability, and the class is only bound by a determination in its favor. Intratex Gas Co. v. Beeson, 22 S.W.3d 398, 404 (Tex. 2000). "If the defendant is found liable, class membership is then ascertainable and the litigation comes to an end. A determination that the defendant is not liable, however, obviates the class, thereby precluding the proposed class members from being bound by the judgment." Id. at 405. Because it inevitably creates a "one-sided" outcome, a "fail-safe" class is generally considered improper. Id.
The trial court defined the class as:
All persons who are or were residents of Louisiana and who, at any time between December 2, 1992 and the present, had an active "tradeline" in Trans Union's CRONUS database and whose name was disclosed by Trans Union and/or any Trans Union subsidiary in a List product, or other similar service, but excluding persons whose names were only disclosed in a List product or other similar service permissible at the time of the disclosure under the provisions of the federal Fair Credit Reporting Act (15 U.S.C. 1681, et seq.)("FCRA")]. Specifically excluded from the class are the judges to whom this case is assigned and members of their immediate families; the officers, directors, employees, attorneys and persons who hold or held a financial interest in Trans Union LLC or any of its predecessors or subsidiaries. (Emphasis supplied.)
This class definition is "circular" in that it includes only those individuals whose information was impermissibly disclosed, and the identity of those individuals cannot be determined until the fact finder *471 decides which disclosures were permissible and which were not. Plaintiffs concede that "the class definition properly includes only those persons who can assert valid claims against Trans Union." Therefore, the trial court is required to decide the ultimate issue of whether the disclosures by Trans Union were permissible in order to determine if any given individual is a class member.
I find, therefore, that the class definition at issue herein creates an improper "fail-safe" class, which does not satisfy the "identifiability" requirement codified in La. C.C.P. art. 591 A(5), and would reverse the trial court.