# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 17-292


**AARON EMIGH, ET AL.**

**VERSUS**

**WEST CALCASIEU CAMERON HOSPITAL, ET AL.**



**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2009-4845
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Billy Howard Ezell, and Phyllis M. Keaty, Judges.



**AFFIRMED.**

**J. Lee Hoffoss, Jr.**
**Claude P. Devall**
**Donald W. McKnight**
**Hoffoss Devall, LLC**
**517 W. College Street**
**Lake Charles, Louisiana 70605**
**(337) 433-2053**
**Counsel for Plaintiffs/Appellees:**
 **Aaron Emigh**
 **Glynn Able Benoit**
 **Laura Allison Delouche**

Michael G. Hodgkins
Veron, Bice, Palermo & Wilson, LLC
Post Office Box 2125
Lake Charles, Louisiana  70602
(337) 310-1600
Counsel for Plaintiffs/Appellees:
Aaron Emigh
Glynn Able Benoit
Laura Allison Delouche

Steven Broussard
Aaron Broussard
Broussard & Hart, LLC
1301 Common Street
Lake Charles, Louisiana  70601
(337) 439-2450
Counsel for Plaintiffs/Appellees:
Aaron Emigh
Glynn Able Benoit
Laura Allison Delouche

Robert E. Landry
Peter J. Pohorelsky
Scofield, Gerard, Pohorelsky, Gallaugher & Landry
901 Lakeshore Drive, Suite 900
Lake Charles, Louisiana  70601
(337) 433-9436
Counsel for Defendant/Appellant:
West Calcasieu Cameron Hospital

Errol J. King, Jr.
Layna C. Rush
Daniel P. Guillory
Baker, Donelson, Bearman, Caldwell  & Berkowitz, PC
450 Laurel Street
Chase Tower North, 20th Floor
Baton Rouge, Louisiana  70801
(225) 381-7000
Counsel for Defendant/Appellant:
UnitedHealthcare Insurance Company

Jonathan M. Herman
Brian C. Roux
The Herman Law Firm
1601 Elm Street, Suite 2002
Thanksgiving Tower
Dallas, Texas  75201
(214) 624-9805
Counsel for Defendant/Appellant:
Louisiana Health Services and Indemnity Company d/b/a
Blue Cross and Blue Shield of Louisiana

Charles A. O'Brien
Allison N. Pham
Post Office Box 98029
Baton Rouge, Louisiana  70898
(225) 295-2454
Counsel for Defendant/Appellant:
Louisiana Health Services & Indemnity Company d/b/a
Blue Cross and Blue Shield of Louisiana

**Robert S. Kleinschmidt, Jr.**
**Attorney at Law**
**Post Office Box 1154**
**Lake Charles, Louisiana  70602**
**(337) 437-3440**
**Counsel for Defendant/Appellee:**
      **R. J. Moss Enterprises, Inc.**

**KEATY, Judge.**

Plaintiffs filed this putative class action suit against various defendants, alleging violations of La.R.S. 22:1874, also known as the "Balance Billing Act." Several of the defendants (hereafter "Appellants") appeal a trial court judgment certifying this matter as a class action. Just over two years ago, the Louisiana Supreme Court determined that "the class action is superior to any other available method for a fair and efficient adjudication of the common controversy over the disputed billing and lien practices." *Baker v. PHC-Minden, L.P.*, 14-2243, p. 1 (La. 5/5/15), 167 So.3d 528, 532. Because Appellants have failed to distinguish this matter from *Baker* or other cases where this court endorsed the use of the class action procedure in cases involving alleged violations of the Balance Billing Act,[1] we affirm.

## FACTS AND PROCEDURAL HISTORY

This lawsuit began when Aaron Emigh filed a petition for damages against West Calcasieu Cameron Hospital (WCCH), alleging that he had received medical treatment, after which WCCH refused to file a claim with his health insurance company and hired a third-party collection agency to collect payment from him directly, in an attempt to double bill him and his insurance provider. Emigh filed a first amending and supplemental petition in July 2010, wherein he sought to have the matter certified as a class action. By way of a second amending and supplemental petition filed in June 2011, Glynn Able Benoit and Laura Allison DeLouche were named as additional putative class representatives. The second amending petition also named the following entities as additional defendants: Highmark, Inc. d/b/a Highmark Blue Shield (Highmark); Louisiana Health Service

---

[1] *See Vallare v. Ville Platte Med. Ctr.*, LLC, 14-261 (La.App. 3 Cir. 11/5/14), 151 So.3d 984, *writ denied,* 15-121 (La. 8/28/15), 176 So.3d 401 and *Desselle v. Acadian Ambulance Serv., Inc.*, 11-742 (La.App. 3 Cir. 2/1/12), 83 So.3d 1243, *writ denied*, 12-518 (La. 4/13/12), 85 So.3d 1253.

& Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana (BCBS); UnitedHealthcare Insurance Company (United); and R.J. Moss Enterprises, Inc. d/b/a Credit Services of Southwest Louisiana (Credit Services).[2]

Plaintiffs each received treatment at WCCH after being injured in a MVA. At the time of his accident, Emigh was insured through his employer by a BCBS plan that was administered by Highmark, Benoit was insured by his employer's self-funded plan that was administered by United, and DeLouche had a direct policy of insurance issued by BCBS.

After a two-day hearing, the trial court certified this matter as a class action pursuant to La.Code Civ.P. art. 591 by judgment dated November 10, 2016. Written reasons for judgment were issued approximately one month later. The judgment was appealed by WCCH, BCBS, and United. WCCH asserts the following errors:

> 1. The trial court erred in finding that plaintiffs satisfied the requirements of typicality and adequacy of representation set forth in La. Code Civ. Proc. art. 591(A)(3) and (4) for maintaining a class action.

> 2. The trial court erred in finding that plaintiffs could maintain this action as a class action where plaintiffs seek mental anguish and/or emotional distress damages, and thereby individualized questions of causation and injury will predominate over common issues making class certification inappropriate under La.Code Civ. Proc. art. 591(B)(1)(3) and Louisiana jurisprudence.

> 3. The trial court erred in adopting without modification the class definition proposed by the plaintiffs, as plaintiffs' proposed class definition would allow individuals who have suffered neither injury nor any alleged violation of the Balanced Billing Act to recover damages in this matter, and therefore does not meet the standards of definability established by La. Code Civ. Proc. art. 591(A)(5) and Louisiana jurisprudence.

---

[2] Credit Services served as WCCH's collection agency for the accounts of its patients who were injured in motor vehicle accidents (MVAs) during the period relevant to the matter.

In its sole assignment of error, BCBS alleges that "The District Court erred in certifying the plaintiff class because DeLouche failed to satisfy all of the elements for class certification." United presents the following assignment of error:

> Did the District Court incorrectly grant Plaintiffs' request for class certification of Benoit's claims against United, when: a) for each purported class member, there could be any number of different contracts, all of which may contain different provisions, which could be relevant to the claims asserted against United; b) Benoit has been made whole relating to his claim and, is therefore, not an adequate class representative in this action because he has suffered no damage; and c) Plaintiffs fail to offer a definable class as it relates to their claims against United[?]

## DISCUSSION

### *Standard of Review*

> A trial court has wide discretion in deciding whether to certify a class. Subject to the manifest error standard, its factual findings can only be reversed upon finding, based on the entire record, no reasonable factual basis for the factual finding and the factfinder is clearly wrong. However, we review its ultimate decision of whether or not to certify the class under the abuse of discretion standard.

*Baker*, 167 So.3d at 538 (citations omitted).

### *Law*

In *Ford v. Murphy Oil U.S.A., Inc.*, 96-2913, 96-2917, 96-2929, p. 4 (La. 9/9/97), 703 So.2d 542, 544 (citation omitted), the supreme court explained:

> The class action is a nontraditional litigation procedure permitting a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court. The purpose and intent of class action procedure is to adjudicate and obtain *res judicata* effect on all common issues applicable not only to the representatives who bring the action, but to all others who are "similarly situated," provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion from the class action.

Louisiana Code of Civil Procedure Article 591, titled "Prerequisites; maintainable class actions," provides in pertinent part:

A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of law or fact common to the class.

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.

(4) The representative parties will fairly and adequately protect the interests of the class.

(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member's cause of action to determine whether an individual falls within the defined class.

"Once these five prerequisites have been met, La.Code Civ.P. art. 591(B) lists three additional criteria, one of which must also be satisfied for certification depending on the type of class action sought." *Baker*, 167 So.3d at 538. Plaintiffs herein sought class certification based on Article 591(B)(3) which provides:

The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:

(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;

(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) The desirability or undesirability of concentrating the litigation in the particular forum;

(d) The difficulties likely to be encountered in the management of a class action;

(e) The practical ability of individual class members to pursue their claims without class certification;

4

(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation[.]

"The burden of establishing the statutory criteria have been satisfied falls on the party seeking to maintain the class action." *Baker*, 167 So.3d at 539.

**The sole issue that a trial court and a reviewing court should consider is whether the class action procedure should be employed to try the matter**. *See Baker*, 167 So.3d 528. Thus, courts need not be "concerned with whether the plaintiffs have stated a cause of action or the likelihood they ultimately will prevail on the merits, but whether the statutory requirements [for class certification] have been met." *Id.* at 537; s*ee also Duhe v. Texaco, Inc.*, 99-2002, p. 11 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, 1078 ("for purposes of certification, a court is not permitted to review the claims in a case on their substantive merit."), *writ denied*, 01-637 (La. 4/27/01), 791 So.2d 637. Moreover, "[a]ny errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action, because **a class certification order is *always* subject to modification or decertification**[.]" *Baker*, 167 So.3d at 537 (emphasis added). *See also* La.Code Civ.P. art. 592(A)(3)(d). Nevertheless, "[t]he determination of whether a class action meets the requirements imposed by law involves a rigorous analysis." *Brooks v. Union Pac. R.R. Co.*, 08-2035, p. 10 (La. 5/22/09), 13 So.3d 546, 554.

In *Baker*, 167 So.3d at 531, the Louisiana Supreme Court granted the plaintiffs' writ application for the purpose of "resolv[ing] a conflict among the appellate courts of this state on the issue of whether a class action is the superior method for adjudicating actions brought pursuant to the Health Care Consumer

Billing and Disclosure Protection Act, La.Rev.Stat. § 22:1871 *et seq.* ("Balance

Billing Act")." The supreme court explained the issue before it as follows:

> Across the state, plaintiffs are filing these actions against health care providers from whom they sought treatment following automobile accidents and with whom their health care insurers had contracted reimbursement rates for the services rendered. At issue is the legality of these providers' policy of collecting or attempting to collect the undiscounted rate from the insured if a liability insurer may be liable, implemented through the filing of medical liens against plaintiffs' lawsuits and settlements pursuant to the health care provider lien statute, La.Rev.Stat. § 9:4752. A review of the jurisprudence reveals plaintiffs in the Third Circuit Court of Appeal proceed pursuant to our class action provisions, while plaintiffs in the Second Circuit Court of Appeal have been denied class certification. After reviewing the record and the applicable law, we find the **class action is superior to any other available method for a fair and efficient adjudication of the common controversy over the disputed billing and lien practices**.

*Id.* at 531-532 (emphasis added). The third circuit cases referred to in the

preceding quote were *Vallare*, 151 So.3d 984, and *Desselle*, 83 So.3d 1243.

In *Vallere*, a defendant hospital appealed the trial court's certification of a

class in a lawsuit brought by plaintiffs, alleging that the hospital and a health

insurer had violated the Balance Billing Act. The class definition approved by the

trial court divided the class into two subclasses, an attempt to recover subclass and

a payor subclass. On appeal, we affirmed the class certification but amended the

class definition to delete the subclasses, reasoning that the plaintiffs in the

subclasses "do not represent different issues." *Vallare*, 151 So.3d at 988. In doing

so, we noted that the "only difference" between the subclasses was that one of

them was "seeking reimbursement for sums paid," while the sole issue to be

decided was "whether the [hospital's] billing practice violated La.R.S. 22:1874."

*Id.* We found significant in *Vallere* the fact that the "class definition [was] very

similar to that approved by this court [several years prior] in *Desselle*," wherein we

"certified a class action where the claim concerned Acadian Ambulance's policy of

attempting to recover its full rate for services from the patient's settlement or judgment with the tortfeasor rather than attempting to recover the discounted rate contracted for between itself and the patient's health insurer." *Id.*

In an opinion rendered upon its grant of certiorari to review the trial court's overruling of an exception of no cause of action that BCBS filed against DeLouche in **this very lawsuit**, the supreme court astutely explained:

> In this two-contract health care system that affects the majority of health insurance policies in this state, the insurance issuer, such as Blue Cross, promises to its insureds, such as Delouche, coverage and the availability of discounted rates based on the existence of its contract with its contracted providers, such as WCCH. The purpose of a health insurance contract and the very reason insureds obligate themselves to the payment of premiums and a restricted choice of in-network providers, is to receive coverage and the benefits of negotiated, reduced health care costs. To narrowly construe the object to mean only payment of covered charges, as Blue Cross argues, ignores the *raison d'etre* of the contract: an economic benefit to the insured. Holding otherwise is illogical based on the terms of this high deductible policy, where the promised reduced rate attaches the instant a medical charge is incurred, regardless of whether a deductible has been satisfied. The insurance policy at issue promised that even the out-of-pocket expenses that count towards Delouche's deductible would be subject to a discount. If all that was promised by Blue Cross was coverage of the maximum amount, the incentive to have insurance, specifically a high deductible policy, dissipates insofar as the insured could simply pay the non-discounted bill herself without also incurring the costs of premiums. For these reasons, we find an object of the contract is the entitlement to discounted health care costs.

*Emigh v. W. Calcasieu Cameron Hosp.*, 13-2985, pp. 7-8 (La. 7/1/14), 145 So.3d 369, 374-75 (footnotes omitted) (hereafter referred to as "*Emigh I*"). Although the class certification hearing had not yet taken place when the supreme court decided *Emigh I*, we note that the court, in dicta, stated that "[t]he liability of a health care provider for balance billing is the central issue in the underlying class action against WCCH[.]" *Id.* at 371 n.3.

*Analysis*

Resolution of these appeals requires that we answer one question, i.e., was this matter properly certified as a class action. To answer that question, we will first review the trial court's factual findings, as explained in its reasons for judgment, regarding whether Plaintiffs met their burden of proving the five prongs found in La.Code Civ.P. art. 591(A). If we find no manifest error in those factual findings, we will next examine the trial court's factual finding with regard to whether Plaintiffs met their burden of proving the requirement set forth in La.Code Civ.P. art. 591(B)(3). Finally, should we conclude that the trial court's findings regarding the foregoing issue were not manifestly erroneous, we can only overturn its decision to certify the class if we find that such decision amounts to an abuse of the trial court's wide discretion. *See Baker*, 167 So.3d 528.

*1. Numerosity*

"The numerosity requirement does not have a strict numbers threshold, rather it is based on the facts and circumstances of each case and requires a showing that 'joinder is impractical and there is a definable group of aggrieved persons.' *Doe v. Southern Gyms, LLC,* 12-1566, p. 12 (La.3/19/13) 112 So.3d 822, 831." *Vallare*, 151 So.3d at 989.

With regard to this factor, the trial court found joinder of the class members would be impractical and that "[a] class action suit would be the most useful and judicially efficient way to proceed with these plaintiffs." None of the Appellants have challenged this factual finding. Amy Johnson, who had previously been appointed as a corporate representative by WCCH, testified at the class certification hearing that the hospital determined that more than 3,000 patients sought treatment at WCCH after being injured in a MVA between 2000 and 2013. Of those, 254 had been identified as potential class members. She explained that

8

the criteria for determining those individuals were: they had sought treatment at WCCH after being injured in a MVA; they had private health insurance at the time and had presented their insurance information at the time of treatment; and they were billed at the full undiscounted, i.e., "chargemaster," rate rather than the contractual discounted rate negotiated between their insurer, or its third-party administrator and WCCH, and their bill had been paid by the liability insurer or private health insurance. Ms. Johnson noted that individuals who had government-issued or workers' compensation insurance were excluded, as were those whose private insurance had lapsed due to non-payment, et cetera. Patients who otherwise met the criteria but had been charged the contracted reimbursement rate were also excluded. No evidence was presented at the hearing to contradict the named Plaintiffs' evidence that they were proper class representatives or that any of the 254 potential class members identified by WCCH should be excluded from the class. Moreover, the trial court would have to delve into the merits of an individual class member's claim in order to exclude them from the class, which runs afoul of the dictates set forth by the supreme court in *Baker* and *Duhe*. Thus, we find no manifest error in the trial court's conclusion that the numerosity requirement was met by Plaintiffs.

## 2. Commonality

> The commonality requirement is met if plaintiffs can demonstrate that there is "one issue, the resolution of which will affect all or a significant number of plaintiffs[.]" *Duhe*, 779 So.2d at 1078. . . . However, it is not necessary that all plaintiffs suffer identical damage and "individual questions of quantum do not preclude a class action when predominate liability issues are common to the class." *McCastle v. Rollins Environmental Services of Louisiana, Inc.* 456 So.2d 612, 620 (La.1984). This Court in *Duhe,* 779 So.2d at 1085**,** stated:
>
> > The mere fact that varying degrees of damage may result from the same factual transaction and same legal relationship or that class members must individually

> prove their right to recover, does not preclude class certification.

> The *Duhe* court held once plaintiffs have demonstrated a course of conduct by the defendants giving rise to a "common nucleus of operative facts[,]" and there are common issues of liability, differences in individual damages while relevant in quantum will not defeat class certification.

*Clark v. Trus Joist MacMillian*, 02-676, 02-512, pp. 8-9 (La.App. 3 Cir. 12/27/02), 836 So.2d 454, 461, *writ denied,* 03-275 (La. 4/21/03), 841 So.2d 793. "The test of commonality is not a demanding one[.]" *Duhe*, 779 So.2d at 1078.

In its reasons, the trial court stated:

> In the present case, all persons attempting to be made class members received services from West Calcasieu Cameron Hospital (WCCH). All persons were subject to WCCH's attempt to bill in excess of the contracted reimbursement rate and/or amounts that should have been paid by the patient's health insurer. The Court finds commonality between all persons attempting to be certified as a class.

The testimony and evidence presented at the class certification hearing support the trial court's finding that Plaintiffs met their burden of proving commonality. Accordingly, we find no manifest error in the trial court's conclusion that plaintiffs satisfied the requirement found in La.Code Civ.P. art. 591(A)(2).

*3. Typicality*

The element of typicality "is satisfied if the class representative['s] claims arise out of the same event, practice, or course of conduct giving rise to the claims of the other class members and those claims arise from the same legal theory." *Desselle*, 83 So.3d at 1251.

The trial court's written reasons provide:

> With regard to the third prong of typicality, the Court finds typicality exists. Typicality is satisfied if the representative plaintiffs' claims arise out of the same event or course of conduct as the class members' claims and are based on the same legal theory. [*Duhe*, 779 So.2d] at 1079. In the present case, the course of conduct that is the basis for this litigation is typical between the class representatives and the class members. In addition the claims are based on the same legal

10

theories. Both the representatives and the members of the prospective class were subject to WCCH's attempt to bill in excess of the contracted reimbursement rate and/or amounts that should have been paid by the patient's health insurer. In addition, each of the plaintiffs purchased health coverage based upon the promise that the contracted providers would not balance bill.

United Health Care argues that Mr. Benoit is not typical of the class because his claim was paid. The jurisprudence is clear that a Defendant cannot pay the claims of a class representative in order to render a class action suit moot. *Davis v. Jazz Casino, LLC*, 03-0005 (La.App 4 Cir. 1/14/04), 864 So.2d 880 [*writ denied*, 04-572 (La. 4/23/04), 870 So.2d 304]. Mr. Benoit has stated that he still wants to continue with this trial to the end, regardless of the claims paid by United. In addition, Mr. Benoit still has remaining claims for general damages, attorney fees, etc. The Court finds that Mr. Benoit's claims are typical of the other plaintiffs.

Again, the testimony and evidence presented by Plaintiffs at the class certification hearing support their allegations that the Defendants acted in violation of the prohibitions set out in the Balance Billing Act. Although each individual Plaintiff may have suffered varying damages as a result of the Defendants' conduct, they all allege that those damages were the result of the same actions, such that any finding of liability will apply to all of the proposed class members. With regard to Mr. Benoit, the evidence shows that his attorney paid WCCH's bill out of the settlement he received in connection with his MVA. After this suit was filed, the trial court judge previously assigned to this matter ordered Mr. Benoit's counsel to file a claim against United, and United reimbursed Mr. Benoit for the full amount that had been paid on his behalf, despite the fact that the deadline to file a claim with United had past. In that vein, Christine O'Brien, United's vice president of sales explained that a self-funded plan such as that of Benoit's employer can direct its third-party claims processor, i.e., United, to pay a claim even after the claim window has expired. Moreover, as correctly noted by the trial court, "[o]nce the damage has occurred and the class solidified, the tortfeasor cannot thereafter escape liability by correcting the problem . . . , and then claiming that damages as

11

to th[at] class member[] ha[s] ceased. *Davis*, 864 So.2d at 890. The trial court committed no error in determining that typicality existed among the proposed class representatives.

*4. Adequacy*

In *Duhe*, 779 So.2d at 1079 (citation omitted), this court explained:

> The purpose of the adequacy requirement is to protect the legal rights of the unnamed class members. . . . The test often used for adequate representation consists of three elements: (1) the chosen class representatives cannot have antagonistic or conflicting claims with other members of the class; (2) the named representatives must have a sufficient interest in the outcome to insure vigorous advocacy; and (3) counsel for the named plaintiffs must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously.

In the instant case, the trial court's reasons for judgment note the following:

> With regard to the fourth prong of adequacy, the Court finds the representative will fairly and adequately protect the interests of the class. . . .
>
> In the present case, there is no evidence that the class representatives have conflicting claims with other members of the class. The evidence shows the named representatives have a sufficient interest in the outcome of the proceedings. The prospective class's counsel are more than able to conduct the proposed litigation vigorously. Thus, the Court finds there is ample evidence to meet the adequacy requirement.

Each of the proposed class representatives testified that they intend to pursue this lawsuit until its conclusion. In addition, Defendants failed to produce any evidence to show that the named Plaintiffs' claims are in any way antagonist with each other or with any other potential class members. Given the much discretion left to the trial court when deciding whether to certify class, we cannot say that the trial court manifestly erred in finding that the proposed class members adequately represent the class.

## 5.  Definability

This court discussed the requirement that a class be objectively definable in

*Duhe*, 779 So.2d at 1080, wherein we stated:

> "The class need not be so clearly defined that every class member can be identified at the commencement of the action." *Ashe v. Board of Elections in City of New York*, 124 F.R.D. 45, 47 (E.D.N.Y.1989). The trial court can modify the class as needed when discovery or the trial adds relevant facts to the record.  This flexibility appears in the language of Article 591(A)(5) (emphasis supplied) "[T]he class is *or may be* defined . . . ."

The trial court's reasons state:

> With regard to the fifth prong of definability, the plaintiffs have established a sufficient class definition in their Fourth Amending and Supplemental Class Action Petition for Damages, Breach of Contract, Declaratory Judgment and Injunctive Relief, paragraph 71.

The class definition proposed by plaintiffs appears below:

71.

> The Plaintiff Class to be certified is defined as follows;
>
> All individuals currently or formerly residing in the State of Louisiana during the relevant time period:
>
> (1)  Having "Health Insurance Coverage" [as defined by La. R.S. 22:1872(18)] providing coverage for themselves or for others for whom they are legally responsible, with any "Health Insurance Issuer" [as defined by La. R.S. 22:1872(19)] at the time "covered health care services" [as defined by La. R.S. 22:1872(8)] were provided at **West Calcasieu Cameron Hospital**; and,
>
> (2)  With which "Health Insurance Issuer" **West Calcasieu Cameron Hospital** was a "contracted health care provider" at the time of service [as defined by La. R.S. 22:1872(6)]; and,
>
> (3)  From whom **West Calcasieu Cameron Hospital** collected, and/or attempted to collect, the "Health Insurance Issuer's Liability [as defined by La. R.S. 22:1872(20)], including, but not limited to, any collection or attempt to collect from any settlement, judgment or claim made against any third person or insurer who may have been liable for any injuries sustained by the patient (which insurers include those providing liability coverage to third persons, uninsured/underinsured coverage, and/or medical payments coverage); and/or

(4)    From whom **West Calcasieu Cameron Hospital** collected, and/or attempted to collect, any amount in excess of the "Contracted Reimbursement Rate" [as defined by La. R.S.22:1872(7)], including but not limited to, any collection or attempt to collect from any settlement, judgment, or claim made against any third person or any insurer which may have been liable for any injuries sustained by the patient (which insurers include those providing liability coverage to third persons, uninsured/underinsured coverage, and/or medical payments coverage).

Appellants argue that the proposed class definition is inadequate because it potentially includes members who suffered no damages. We reject this argument as this court and the supreme court have clearly stated that a court should not look to the merits when determining class certification. *See Baker*, 167 So.3d 528, *Duhe*, 779 So.2d 1070. Moreover, "because a class certification order is *always* subject to modification or decertification," "[a]ny errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action." *Baker*, 167 So.3d at 537. We conclude that the class definition approved by the trial court has been sufficiently tailored to fit the facts of this matter. Therefore, mindful of the fact the trial court has the authority to later modify or decertify the class should it deem it necessary, we cannot say that it manifestly erred in concluding that Plaintiffs sufficiently defined the class.

## 6. *Common Questions of Law and Fact Predominate*

After concluding that Plaintiffs had satisfied the five requirements of La.Code Civ.P. art. 591(A), the trial court found that they had also met the additional criteria set forth in La.Code Civ.P. art. 591(B)(3). In that regard, the written reasons noted:

In the present case, the Court finds that the questions of law and fact common to the class members predominate over the questions affecting only individual members. In addition, the Court is convinced that a class action is the fairest and most efficient way to adjudicate this matter. The main issues in this matter are WCCH's

14

balance bill procedure and health insurers, which contracted with WCCH, failure to protect its insureds and enrollees from WCCH's practice. These are common issues of law and fact between the class representatives and the class members. There is no requirement that every question of law and fact has to be common between the members, only that the questions of law and fact of the class predominate those of any individual member.

At oral argument in this matter, Appellants complained that Plaintiffs focus on the jurisprudence rather than on the facts of this case. Plaintiffs, on the other hand, suggested that Appellants have incorrectly focused on the merits of Plaintiffs' claims and avoided addressing the caselaw where the courts have found that the nature of actions brought under the Balance Billing Act makes them suitable for adjudication as class actions. Because we have found no manifest error in the trial court's factual findings and because Appellants have failed to distinguish this matter from *Baker*, *Vallare*, and *Desselle*, we conclude that the trial court did not abuse its discretion in certifying this matter as a class action.

## DECREE

For the foregoing reasons, the judgment of the trial court certifying this matter as a class action is affirmed. All costs of this appeal are assessed against West Calcasieu Cameron Hospital, Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana, and UnitedHealthcare Insurance Company.

**AFFIRMED**.